LANDEX, INC., A FOREIGN CORPORATION, INCORPORATED UNDER THE LAWS OF THE STATE OF ARIZONA, FRANK E. GLINDMEIER, ET AL., APPELLANTS, v. THE STATE OF NEVADA, EX REL. ROBERT LIST, ATTORNEY GENERAL, AND NEVADA REAL ESTATE DIVISION, DEPARTMENT OF COMMERCE, EX REL. R. E. HANSEN, REAL ESTATE ADMINISTRATOR, RESPONDENTS.

No. 9053

July 26, 1978                                    582 P.2d 786

---

*Vargas, Bartlett, and Dixon,* and *James S. Beasley,* Reno, for Appellants.

*Robert List,* Attorney General, and *James I. Barnes, III,* Deputy Attorney General, Carson City, for Respondents.

## OPINION

By the Court, MANOUKIAN, J.:

On May 2, 1974, acting under Nevada's misleading advertising legislation, NRS 207.171, *et seq.,* and Nevada Rules of

Civil Procedure, Rule 65, *et seq.,* governing injunctions, and incidentally pursuant to NRS 119, our licensing and regulation of land sales laws, respondents commenced this action in district court against appellant Landex, Inc., (hereinafter "Landex"), and Frank Glindmeier, individually, president and sales manager of Landex. The complaint alleged three causes of action. The first cause of action requested monetary civil penalties against Landex and Glindmeier, pursuant to NRS 207.174 for false and misleading advertising and requested the issuance of an injunction pursuant to NRS 207.176 enjoining appellant Landex from continuing its deceptive practices. The second cause of action sought to enjoin Landex from using advertising material in its land sales business which had not received the prior approval of the Nevada Department of Commerce, through its Real Estate Division (hereinafter "Division"), in accordance with NRS 119.120(1)(c) and 119.180(7). In its third cause of action, the State sought to enjoin Landex from selling real estate through "registered representatives," a proscribed practice (*see* NRS 119.180), rather than through licensed real estate salesmen or brokers, as required by NRS 645.210 and 645.230.

Prior to this litigation, Landex successfully sought, through the Division, an exemption from all effects of Chapter 119 of the Nevada Revised Statutes, our land sales legislation, with the exception that all advertising used in the sale of Mountain Meadow Ranches (hereinafter "MMR") must be submitted to and approved by the Division under NRS 119.120(1)(c).

The precise authority of this proceeding is contained in NRS 207.171, 207.174, and 207.176.[1]

Incident to the first cause of action, the trial court found that on March 26, 1974, appellants, through their various agents,

---

[1]These statutes in relevant part provide:

NRS 207.171, "It is unlawful for any person, firm, corporation or association or any agent or employee thereof to use, publish . . . or by any other manner or means, including but not limited to solicitation or . . . door-to-door contacts, any statement which is known or through the exercise of reasonable care should be known to be false, deceptive or misleading in order to induce any person to purchase . . . any title or interest in any real . . . property . . . or to enter into any obligation or transaction relating thereto. . . .''

NRS 207.174, "Any person, firm, corporation or association or any other organization which violates any provision of NRS 207.171 . . . is liable for a civil penalty not to exceed $2,500 for each violation, which shall be recovered in a civil action brought in the name of the State of Nevada by the attorney general . . . in a court of competent jurisdiction. As used in this section, the term, "each violation" includes, as a single violation, a continuous or repetitive violation arising out of the same act."

NRS 207.176, "The attorney general . . . may bring an action in any court of competent jurisdiction in the name of the State of Nevada on his own complaint or on the complaint, of any board, officer, person, corporation or association to enjoin any violation or proposed violation of the provisions of NRS 207.171 to 207.177, inclusive."

had made representations which "were and are false or deceptive or misleading, or tended to mislead within the meaning of NRS 207.170 *et seq.*" The court further found that "said false, misleading, or deceptive statements were made to twenty prospective purchasers," and that Glindmeier "was directly responsible for the form and use of such false, misleading, or deceptive statements." Incidental to these findings, Landex was ordered to pay a sum of $25,000 for twenty violations of NRS 207.170, and appellant Glindmeier was ordered to pay $2,500 for the same twenty violations. Additionally, appellants were permanently enjoined from making any further representations of the nature determined to be misleading and were ordered to offer restitution to all those persons who purchased a parcel of the MMR subdivition after March 26, 1974.

With respect to the second and third causes of action, appellants were permanently enjoined from utilizing any unapproved advertising and from utilizing registered representatives for purposes of selling the subdivision's property.

This appeal is taken only from those portions of the judgment relating to the first cause of action. Appellants contend the trial court erred (1) in its finding that Glindmeier violated NRS 207.170, claiming the evidence is insufficient; (2) in concluding that the doctrines of *res judicata* and collateral estoppel did not apply to preclude respondents' relief; (3) in ordering Landex to make restitution to all purchasers of "MMR" after March 26, 1974; and (4) in holding that appellants had committed twenty violations of NRS 207.170.

1. *Substantial Evidence.*

Appellant Glindmeier contends that he, as president of Landex, could not be held responsible for unauthorized statements made by individual sales representatives and that even if it were shown that Glindmeier was directly responsible for the alleged misrepresentations, the Washoe District Court was barred by the doctrines of res judicata and collateral estoppel from finding that the statements made by the Landex personnel were deceiving and misleading. The latter questions will be discussed *infra*.

As to appellant Glindmeier's first claim, this Court's review of a trial court's determinations of factual questions is limited. In Beverly Enterprises v. Globe Land Corp., 90 Nev. 363, 526 P.2d 1179 (1974), we stated:

> Where a question of fact has been determined by the trial court, this court will not reverse unless the judgment is clearly erroneous and not based on substantial evidence. NRCP 52(a); Kockos v. Bank of Nevada, 90 Nev. 140, 520

P.2d 1359 (1974); Fletcher v. Fletcher, 89 Nev. 540, 516 P.2d 103 (1973).

*Id.* at 365, 526 P.2d at 1179.

The record shows that appellant Glindmeier exercised direct supervision of the sales personnel and their promotional presentations. He may not, therefore, escape culpability by contending that Landex alone is liable. *See,* NRS 207.171 regarding agent and employee 'liability; *see also,* Jory v. Bennight, 91 Nev. 763, 542 P.2d 1400 (1975). In addition to the other substantial evidence, we find persuasive the fact of Glindmeier's testimony that he personally instructed his sales personnel as to what would comprise their sales presentations and also drafted the podium speeches which were given during the sales presentations. Appellants contend that the sales personnel "volunteered" statements which were not contained in the prepared speeches or materials. The record does not support this contention.

Several specific representations made to the prospective purchasers on May 26, 1974, which were found to be misrepresentative of the actual subdivision are that: less than one percent of the total land in Nevada is available for sale to the public; "MMR" consists of flat land with a few rolling hills; there were springs and wells throughout the subdivision; all water found in the subdivision was good water; costs of trips from the purchasers' homes to purchase as well as on a subsequent trip to determine if they desired to retain the property would entitle the purchaser to a federal income tax deduction; all of the registered representatives in the Landex sales room on March 26, 1974, were approved for their selling activities and were highly qualified in all phases of investment; and, that parcels in the subdivision could be resubdivided by the purchasers.

Evidence to establish violations of NRS 207.171 is not that quantum necessary to prove a victim's claim of fraud. To prove false advertising under our statute, the State need only establish that the defendants made statements they knew or should have known were untrue or misleading in order to effect the sale. Actual deception is unnecessary to create liability under NRS 207.173. *Cf.* Lubbe v. Barba, 91 Nev. 596, 540 P.2d 115 (1975). The standard for untrue or misleading statements is the likelihood that the public will be misled. *See,* Double Eagle Lubricants, Incorporated v. F.T.C., 360 F.2d 268 (10th Cir. 1965). Our review of the record reveals substantial evidence supportive of the trial court's determinations

under NRS 207.171 and further respecting Glindmeier's individual liability. Additionally, the trial court was justified in entering a permanent injunction enjoining Landex from further pursuit of such prohibited activities.

2. *Res Judicata and Collateral Estoppel.*

Appellants' second claim stems from a decision of the Fourth Judicial District Court of the State of Nevada, in and for the County of Elko, rendered prior to the within litigation on March 15, 1974. In that action, the district attorney of Elko County sought to enjoin the sale of land in "MMR" incident to Chapter 278 of the Nevada Revised Statutes, opposing Landex's claim of exemption from that Chapter's application. Incidental to the primary claims, the district attorney alleged that Landex was in violation of NRS 207.171, by virtue of an alleged representation by a corporate agent to the effect that the marketed "open space" land had a reservation of water rights in Landex. The Elko trial court in a relevant part of its decision concluded:

> 5: The court has observed from the promotional speeches filed with the Real Estate Commission by the Defendant, that the "Sales Pitch" is that land is becoming scarce; that land is a prudent investment, and in many cases in the past has resulted in huge profits for the land owner. As for example, land on the Las Vegas Strip. The buyers are invited to purchase as a speculative investment. *There is nothing unlawful about this approach as long as there is a full disclosure.* (Emphasis added.)

Appellant argues that as a result of the Elko County District Court's determinations, the Washoe County District Court was precluded by the doctrines of *res judicata* and collateral estoppel from finding that the representations made by the sales representatives of Landex were false or misleading.

In Paradise Palms v. Paradise Homes, 89 Nev. 27, 505 P.2d 596 (1973), this Court, quoting from the landmark case of Bernhard v. Bank of America, Nat. Trust & Sav. Ass'n, 122 P.2d 892 (Cal. 1942), stated,

> 'The doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action' . . .

'In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?'
*Id.* at 30–31, 505 P.2d at 598–99.

Respondents concede the finality of the prior adjudication; however, they contend that they were not in privity with the Elko County district attorney and that the issues litigated in this Washoe County proceeding were different from those litigated and decided in the Elko County action. From the record before us, we are constrained to agree with respondents that the issues tried in the Elko proceeding are markedly dissimilar from those now before us. The Elko case involved a different form of advertising than the form of podium speeches and other personal contact. We find it unnecessary to discuss the privity question.

Furthermore, the Elko County decision as to the tendency of the questioned statement to mislead the public was qualified by the language "as long as there is a full disclosure." The issue litigated there focused on whether there was, in fact, enough of a disclosure so as to fully inform prospective purchasers. Moreover, the representations were of a different type and nature, were made subsequent to the Elko decision, and were made in Reno, not Elko. The doctrine of *res judicata* proscribes the hearing of issues determined by a court of competent jurisdiction in a prior proceeding between the same parties regarding the same cause of action. Markoff v. New York Life Ins. Co., 92 Nev. 268, 549 P.2d 330 (1976). The doctrine of collateral estoppel operates to preclude the parties or their privies from relitigating issues previously litigated and actually determined in the prior proceeding. State v. Kallio, 92 Nev. 665, 557 P.2d 705 (1976); Clark v. Clark, 80 Nev. 52, 389 P.2d 69 (1964). The trial court committed no error in ruling the defenses of *res judicata* and collateral estoppel inapplicable.

3. *Restitution.*

Restitution was not one of the remedies specifically alleged or prayed for by respondents in their complaint. It is appellant's contention that assuming *arguendo* the complaint was sufficient to allow restitution, on the facts of this case an award of restitution was improper. We agree.

In support of their claimed entitlement to restitution, respondents rely heavily on People v. Superior Court of Los

Angeles County ("Jayhill"), 507 P.2d 1400 (Cal. 1973). At the time *Jayhill* was decided, the California Business and Professions Code provided that false or misleading advertising "may be enjoined" in an action by the attorney general but was silent as to the power of the trial court to order restitution in such a proceeding. The California statutes involved are similar to NRS 207.171, *et seq.* In considering the propriety of the attorney general seeking restitution on behalf of defrauded purchasers, the California Supreme Court stated,

> At the time the complaint was filed Business and Professions Code Section 17535 provided that false or misleading advertising "may be enjoined" in an action by the Attorney General, but was silent as to the power of the trial court to order restitution in such a proceeding. On the other hand the statute did not restrict the court's general equity jurisdiction "in so many words, or by necessary and inescapable inference." In the absence of such a restriction a court of equity may exercise the full range of its inherent powers in order to accomplish complete justice between the parties, restoring if necessary the *status quo ante* as nearly as may be achieved. In particular, in an action by the Attorney General under section 17535 a trial court has the inherent power to order, as a form of ancillary relief, that the defendants make or offer to make restitution to the customers *found to have been defrauded.* (Citations omitted; emphasis added.)

*Id.* at 1402. *See also,* Annot., 55 ALR3d 198 and Annot., 59 ALR3d 1222.

Appellants concede, and we recognize, that a court has the inherent power, ancillary to its general equity jurisdiction, to order restitution in an appropriate case, *see,* Securities & Exchange Com'n v. Golconda Mining Co., 327 F.Supp. 257 (S.D. N.Y. 1971); however, they contend that the State must prove that persons were actually defrauded and suffered injury as a result of the misrepresentations made. Respondents contend that they need only prove that a violation of NRS 207.171 has occurred, without more, and cite NRS 207.173 which provides in part, "it is sufficient . . . that any statement referred to in NRS 207.171 has a tendency to deceive or mislead the public because of its false or deceptive or misleading character even though no member of the public is actually deceived or misled by such statement." We are constrained to agree with appellant Landex's argument. In People v. Superior Court of Ventura County, 552 P.2d 760 (Cal. 1976), the California Supreme Court, dealing with an action brought by a district attorney under legislation similar to NRS 207.171 *et seq.,* stated:

> Both complaints seek restitution to the investors. . . . The People . . . *are still required to prove that restitution is appropriate even though civil penalties may also be appropriate in the absence of such proof.* (Citations omitted; emphasis added.)

*Id.* at 763. *See also,* Kugler v. Romain, 279 A.2d 640 (N.J. 1971).

The comparatively limited proof required to establish false or deceptive advertising contrasts sharply with that necessary to prove actionable fraud. To establish fraud there must be proven:

> [1] A false representation made by the defendant, [2] knowledge or belief on the part of the defendant that the representation is false—or, that he has not a sufficient basis of information to make it, [3] an intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation, [4] justifiable reliance upon the representation on the part of the plaintiff in taking action or refraining from it, and [5] damage to the plaintiff, resulting from such reliance. . . .

*Lubbe, supra,* at 599, 540 P.2d at 117; *accord,* Ach v. Finkelstein, 70 Cal.Rptr. 472 (1968). Viewing the question most favorably to respondents, the first three elements have been proven; however, we find no evidence on elements four and five. Under our decision today, as to false advertising, no purchaser need be produced, or even exist. However, relative to the proposition of actionable fraud, the record does not reveal who, if any, of the some nine hundred purchasers were recipients of the deceptive advertising. Not a single purchaser of a "MMR" parcel was produced at trial, and there is not a shred of evidence showing reliance upon the false, deceptive, or misleading presentations. Similarly, no evidence was proffered showing that all buyers were similarly situated, and, therefore, what amounts are owed to each. Because of like evidentiary voids we do not know whether reliance by the purchasers is provable, as some purchasers may have known, as a result of their knowledge and experience, that the representations were false or misleading. Even more fundamentally, no purchaser or representative of a class was joined as a party to the proceeding, and for this reason alone restitution was not an available remedy. More precisely, the court was without the power to enter a judgment ordering an offer of restitution or, correspondingly, reconveyances. *Compare,* United states v. Parkinson, 240 F.2d 918 (9th Cir. 1956); *see also, Kugler, supra* (by

reason of a price unconscionability common to all transactions, all of the sales contracts were held invalid and unenforceable); *Jayhill, supra* (holding that as a form of ancillary relief to the attorney general suit, a court may award restitution to all purchasers shown to have been defrauded).

Although Nevada is a "notice pleading" state, our practice is not so liberal as to permit recovery in these circumstances. The court below erred in ordering restitution.

4. *Twenty Violations of NRS 207.170.*

Appellants next challenge the award of civil penalties, contending that the wording of NRS 207.170 "clearly establishes that it is the act of publication and not the extent of that advertising which determines whether one violation, or a number of violations, of false advertising has been committed." They argue that here only one violation of NRS 207.171 occurred, referring to NRS 207.174 which states in part: "As used in this section, the term 'each violation' includes, as a single violation, a continuous or repetitive violation arising out of the same act." The "same act" language requires that there be separate acts involved before a person can be charged with more than one violation of NRS 207.171.

In the instant case, the court found that the statements complained of were made, initially, by a person giving a podium speech to a group of approximately twenty persons in a Reno "hospitality room." It was further established that immediately thereafter various sales representatives of Landex approached each potential investor individually and made certain misrepresentations used as a partial basis of the complaint. It is essentially appellants' contention that since the alleged misrepresentations were made to the group, there is only one violation. We do not agree.

In *Jayhill, supra,* the court interpreted similar statutory language and determined the number of violations by the number of victims. There, the defendant made twenty-five separate misrepresentations to each customer in their door-to-door sales of encyclopedias. The *Jayhill* court imposed the maximum penalty of $2,500 for each violation and rejected the contention that a violation occurs with each misrepresentation, irrespective of the number of victims. *Compare,* State v. Ralph Williams' N.W. Chrysler Plymouth, 553 P.2d 423 (Wash. 1976) (adopting the one violation per each misrepresentation rule).

In *Jayhill,* the court described the purpose behind California's false advertising provisions as follows:

'The new civil remedy was added because the injunction

and misdemeanor provisions of the old law were not adequate to stop false advertising rackets. The injunction is little more than a cease and desist order. The guilty party keeps his gains and is merely ordered not to defraud people in the same way again. Criminal prosecutions are seldom undertaken because juries tend to be reluctant to apply criminal sanctions in white-collar crimes and because it is difficult for outsiders to fix responsibility in the modern corporate structure.'

507 P.2d at 1404, n. 3.

Appellants argued that should we follow the *Jayhill* rationale, and if the alleged misrepresentations had been printed in a newspaper, they would be liable for violations numbering in the thousands. The *Jayhill* court was faced with, and, like this court, not concerned with that possibility. The probable impact of the podium presentations, followed by the one-to-one confrontations, is much greater than would be similar statements contained in a newspaper or magazine. On this record, we do adopt the one-violation-per-customer rule announced in *Jayhill.*

The judgments appealed from are wholly affirmed, with the exception of that portion ordering Landex to offer restitution to its purchasers, which restitutionary order is reversed.

MOWBRAY and THOMPSON, JJ., concur.

BATJER, C. J., and GUNDERSON, J., concurring:
We concur in the result.