HOMEWOOD INVESTMENT COMPANY, INC., UNITED PACIFIC INSURANCE COMPANY AND TOM GENTRY, APPELLANTS, *v.* G. DONALD MOSES, TRUSTEE FOR HOME LUMBER & SUPPLY CO., A DISSOLVED NEVADA CORPORATION, RESPONDENT.

No. 10172

March 28, 1980 608 P.2d 503

*Breen, Young, Whitehead & Hoy,* and *David R. Belding,* Reno, for Appellants.

*Vargas, Bartlett & Dixon,* and *Robert W. Marshall,* Reno, for Respondent.

328

## OPINION

By the Court, BATJER, J.:

Homewood Investment Company (Homewood), United Pacific Insurance Company (United), and Tom Gentry appeal from the judgment entered against them and in favor of Home Lumber and Supply Company (Home Lumber). Homewood, and Gentry as Homewood's indemnitor, were ordered to pay $16,557.85 for materials furnished by Home Lumber to Homewood, $11,065.57 for accrued late charges through January, 1977, and $7,613.15 for attorney's fees. Judgment was entered against United for the full amount of its $5,000 contractor's surety bond.

On appeal, Gentry argues that the trial court erred by enforcing the indemnification agreement and imposing personal liability on him for Homewood's obligations. Homewood and Gentry contend that the late charges imposed upon the overdue balance are usurious. United seeks a modification of the judgment to reduce its liability to an amount equal to Home Lumber's pro rata share of the bond. We affirm the awards against Homewood and Gentry. However, we agree with United that Home Lumber is not entitled to the full amount of the surety bond. Consequently, we remand the case to the district judge for a determination of Home Lumber's pro rata share.

At one time, Homewood was a licensed Nevada contractor owned by Richard Osmundsen. In 1972, Homewood was incorporated, and the stock was acquired by Kingswood Tahoe Corporation. Gentry was the sole shareholder of Kingswood. Osmundsen was the president of Homewood.

Homewood applied for an unlimited contractor's license because it wished to commence a condominium project. The State Contractors' Board was unwilling to issue an unlimited license unless Homewood could show greater financial responsibility. However, in order to accommodate Homewood, the Board offered to grant an unlimited license if Osmundsen and Gentry agreed to personally indemnify the corporation's obligations. After the indemnification agreement was submitted,

and a $5,000 surety bond was posted by United, the Board approved an unlimited license on August 29, 1972.

Homewood ordered building materials from Home Lumber for its condominium project. Homewood's account became delinquent during the summer of 1973. When Home Lumber learned of the indemnification agreement, it consented to continue extending credit in reliance on the agreement, rather than perfecting its materialmen's lien against the construction project. The delinquency continued and, eventually, Home Lumber brought this action to collect the balance due on Homewood's open account for materials furnished by Home Lumber.[1]

The district judge denied Gentry's motion for summary judgment on April 19, 1976. The order denying that motion is not appealable. NRAP 3A(b)(5). On January 19, 1977, the district judge rendered his decision in favor of Home Lumber. This appeal is from that judgment and from the order denying appellants' motion for a new trial.

Gentry contends that the district judge erred by enforcing the indemnification agreement because (1) Gentry's signature was forged, (2) the Board acted beyond the scope of its statutory powers by accepting the agreement, and (3) Home Lumber did not perfect its materialmen's lien.

There is no merit to Gentry's claim that the district judge improperly placed upon him the burden of proving forgery. Both sides presented expert testimony and conflicting stories about the signature on the agreement. After weighing the evidence and scrutinizing the signature himself, the district judge, as the trier of fact, was convinced that Gentry's signature was not forged. We will not disturb that factual determination because it is not clearly erroneous and it is based upon substantial evidence. Landex, Inc. v. State ex rel. List, 94 Nev. 469, 582 P.2d 786 (1978).

Gentry also seeks to nullify the agreement by asserting that the Board acted in excess of its statutory authority by requiring the indemnification agreement as a condition precedent to issuing an unlimited license. The Board may limit the field and scope of a contractor's operations by setting a monetary limit on the contractor's license if such action is necessary to protect the health, safety and general welfare of the public. NRS 624.220. In this case, the Board would have placed a $100,000 limit on Homewood's license in the absence of assurance that

---

[1]A default judgment was entered against Richard Osmundsen on March 12, 1975.

Homewood's creditors would be paid. As an accommodation to Homewood, the Board agreed to issue an unlimited license if Gentry and Osmundsen agreed to indemnify Homewood's creditors.

The Board's action tends to promote the statutory policy of protecting the public welfare, and is consistent with a reasonable interpretation of its statutory powers. There is no statutory proscription against accepting indemnification agreements from interested third parties. The Board has accepted indemnification agreements and other forms of security for years, with1out objection from the legislature. The legislature's acquiescence is an indication that the Board's interpretation of its authority is consistent with legislative intent. Sierra Pacific Power Co. v. Department of Taxation, 96 Nev. 295, 607 P.2d 1147 (1980); Oliver v. Spitz, 76 Nev. 5, 348 P.2d 158 (1960). No error was committed by the district judge in finding that the Board was empowered, under NRS 624.220(2), to require an indemnification agreement as a condition precedent to issuance of an unlimited license.

Gentry argues that Home Lumber is estopped from asserting its claim based upon the indemnification agreement because it failed to perfect its materialmen's lien against the condominium project. We disagree. This is not an action to foreclose such a lien, nor does the indemnification agreement require perfection of available liens as a condition precedent to collection of amounts due.[2] *Cf.* First National Bank of Nevada v. Barengo, 91 Nev. 396, 536 P.2d 487 (1975) (payee not required to foreclose deed of trust before bringing suit on guaranty); Manufacturers & Traders Trust v. District Court, 94 Nev. 551, 583 P.2d 444 (1978). The district judge correctly concluded that the indemnification agreement is valid and enforceable against Gentry.

Homewood and Gentry argue that the late charges imposed are usurious because the rate of 1½ percent per month on the balance overdue exceeds the statutory maximum interest of 12 percent per year. *See* NRS 99.050.[3] Any loan agreement which

---

[2]The pertinent language in the indemnification agreement states:

We, Richard Osmundsen, President and Tom Gentry, Director, officers and Stockholders of Homewood Investment Co., do hereby personally indemnify the creditors of Homewood Investment Co. for any and all liabilities of the said Homewood Investment Co., wherein such liabilities are incurred in the ordinary course of the construction business within the State of Nevada.

[3]NRS 99.050 was amended in 1979. The statutory maximum is now 18 percent.

specifies a greater rate of interest than the statutory maximum is void, and the lender may recover only the amount of cash actually advanced. Pease v. Taylor, 88 Nev. 287, 496 P.2d 767 (1972); NRS 99.050(3).

In this case, there was no loan of money. There was a contract of sale which provided that a "late charge of 1½ percent per month (annual percentage rate of 18 percent) will be assessed to past due balances". If the purpose of a reasonable late charge is to induce timely payment of an obligation, and the debtor can avoid the charge by prompt payment, then the late charge is not interest, and thus is not governed by NRS 99.050. See Hayes v. First National Bank of Memphis, 507 S.W.2d 701 (Ark. 1974); cf. Union Bank v. Kruger, 463 P.2d 273 (Wash.App. 1969) (promise to pay greater rate of interest for delinquent payments not usurious); United American Life Ins. Co. v. Willey, 444 P.2d 755 (Utah 1968). The award of accrued late charges is proper.[4]

[Headnote 7]

United correctly asserts that Home Lumber is entitled to only a pro rata share of the $5,000 surety bond. NRS 624.273 states that "[e]ach bond or deposit required by NRS 624.270 shall be in favor of the State of Nevada for the benefit of any person who: . . . [a]s a supplier or materialman furnished materials or equipment for the construction contract". Subdivision 5 of that provision states that "[c]laims, other than labor claims, against a bond or deposit shall have equal priority, . . . and if the bond or deposit is insufficient to pay all such claims in full, they shall be paid pro rata". There is evidence in the record that other claims against United have been asserted. Therefore, the case is remanded to the trial court for a determination of Home Lumber's pro rata share of the bond. In all other respects, the judgment is affirmed.

MOWBRAY, C. J., and THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.

---

[4]Courts will not hesitate to declare usurious an agreement providing for late charges if the agreement is a mere contrivance to avoid the usury law and is, in reality, a loan or forbearance of money for more than legal interest. See, e.g., Hayes, 507 S.W.2d at 703. That is not the case here.