860 P.2d 725 (1993)
Karen ELLIOTT, Appellant,
v.
DENTON & DENTON, Respondent.
No. 22842.
Supreme Court of Nevada.
October 4, 1993.
*726 Graziadei & Cantor, Las Vegas, for appellant.
Denton & Denton, Las Vegas, for respondent.

OPINION
SPRINGER, Justice:
In 1984, Damsco Escauriaza sued Karen Elliott's former husband, Jack Elliott, and obtained a $22,000.00 judgment against him. Escauriaza instructed the sheriff of Clark County to execute the judgment by levying upon an automobile that had been owned by Karen Elliott and Jack Elliott as community property, but which had been awarded to Karen Elliott in a divorce.
Nevada, like most states, has a statute which, by its terms, provides an exclusive[1] and summary means for disposing of claims like Karen Elliott's, that the sheriff has levied on the wrong property. The statute, NRS 31.070, is called a "third-party claims" statute. This statute sets forth a very simple procedure for cases where, as here, "the property levied on is claimed by a third person as his [or her] property." NRS 31.070(1). All the claimant has to do under the statute is to make a sworn statement claiming rightful ownership and possession of the property levied-upon and present the claim to the sheriff. The sheriff, in turn, "must release the property" unless the person who instituted the levy on the property disputes the third party claim and gives to the sheriff an undertaking equal to double the value of the property. Id. If such an undertaking is not presented to the sheriff within seven days of the claim, the sheriff simply returns *727 the property to its true owner. Id. In cases in which the levying party puts up the required undertaking, NRS 31.070 provides for resolution of the opposing claims by "motion to the court without the necessity of an independent action." NRS 31.070(2) (emphasis added).
For reasons that are more than a little obscure, Karen Elliott did not avail herself of the simple, exclusive, summary procedures set forth in NRS 31.070; instead, she filed a lawsuit, an "independent action" against the sheriff and Denton and Denton, the judgment creditor's attorneys, even though NRS 31.070(1) expressly states that the sheriff "shall not be liable for damages to any such third person for the taking or keeping of such property if no claim is filed by any such third-party" and even though NRS 31.070 provides the exclusive remedy[2] to Elliott for the release of her car. (Emphasis added.)
In this first lawsuit (which is not the subject of this appeal), Elliott sought damages against Denton and Denton for wrongful attachment (sic) and also sought an injunction ordering Denton and Denton to return her car to her. Elliott settled her claim and dismissed her lawsuit against the sheriff; however, she continued to pursue her injunction action against Denton and Denton. Rather than dismiss the injunction action against the lawyers out of hand,[3] the trial court, in February of 1986, actually issued an injunction ordering Denton and Denton to wrest the car out of the sheriff's possession and return it to Karen Elliott, even though a substantial storage lien had to be paid by the law firm in order to comply with the court's injunctive command. The trial court denied recovery on Elliott's tort damage action against Denton and Denton for "wrongful attachment."[4]
The basis for the trial court's issuing, in the first lawsuit, a mandatory injunction against the judgment creditor's attorneys remains a mystery. There would appear to be no conceivable justification for ordering the law firm to bail out Karen Elliott's car; still, a mandatory injunction was entered, and it does appear from the record that in June of 1988, Denton and Denton did in fact honor the injunction by paying $4,000.00 in storage fees to the sheriff to gain possession of the car. After she got her car back, Karen Elliott sued Denton and Denton again. This second lawsuit is the subject of this appeal.
In her second lawsuit, Karen Elliott sued Denton and Denton for the "diminution *728 in value of the automobile caused while in the Respondents' possession or constructive possession and damages based upon the Respondents' negligence in failing to properly provide for, preserve and care for the automobile."[5] (Elliott Op.Br. at 4; emphasis added). The trial court dismissed her complaint with prejudice, and she now appeals the denial of her negligence[6] claim against Denton and Denton.
One of the many paradoxical aspects of this case is that Karen Elliott did not argue to the trial court, and does not argue on appeal, that any member of or agent of the law firm of Denton and Denton was negligent. Perhaps the reason for this is that none of the lawyers in the Denton firm had the duty to "provide for, preserve and care for the automobile." Until, in response to a mandatory injunction, Denton and Denton paid $4,000.00 to the sheriff so that the car could be returned to Karen Elliott, neither the law firm nor their client, Escauriaza, had the right to come near the car, much less to "preserve and care for" it. The law firm quite obviously, at no time, had any duty of due care with respect to Karen Elliott's car. Consequently, there can be no breach of a duty of due care and no negligent tort liability on the part of Denton and Denton. The trial court's judgment will, therefore, be affirmed.[7]
SHEARING, J., and ZENOFF[8], Senior Justice, concur.
STEFFEN, Justice, with whom YOUNG, Justice, joins, dissenting:
Equity, oh Equity, the fairest flower in the judicial garden, where art thou? From the deafening silence came the muted, agonized reply, "smothered by an overgrowth of technicalilies (pun intended)!"
Hopefully, my colleagues and others who may stumble across this dissent, will overlook my inability to resist a brief sojourn into the world of drama.
This case is about equity, or, perhaps more correctly, the lack thereof.[1] It involves *729 the appellant, Karen Elliott (Elliott), the only truly innocent party, and the respondent, Denton & Denton (Denton), a reputable law firm that was instrumental in separating Elliott from her 1964 Mercedes Benz 230-SL automobile. The trial evidence confirmed that the vehicle was listed as an antique.
The tortured history of this case commenced with a determined effort by Denton to satisfy its client's judgment against Elliott's former husband, Jack Elliott.[2] Denton obtained a writ of execution and caused Elliott's Mercedes to be levied upon by the Clark County Sheriff's Department. The vehicle was seized and stored at Southern Nevada Auto Parts despite Elliott displaying her documents of ownership to the levying officer. Moreover, both before and after the levy, Elliott's attorney informed Denton that the vehicle was Elliott's separate property and therefore immune to attachment or sale in satisfaction of her former husband's separate debt. Unfazed, Denton scheduled, or permitted the scheduling of an execution sale of the Mercedes to occur on September 10, 1984.
Unable to convince Denton of the impropriety of taking her automobile, Elliott filed an action (hereinafter "the 1984 action) against the sheriff, Denton, and Denton's client, Escauriaza. In her complaint for wrongful attachment, Elliott sought declaratory and injunctive relief as well as damages. Denton's answer interposed no affirmative defense addressing Elliott's failure to make a statutory claim for the return of her vehicle. Equitable relief in the form of a temporary restraining order, and later a preliminary injunction, issued enjoining the defendants from disposing of Elliott's Mercedes. In the meantime, the car remained in storage pending the outcome of the action.
On March 11, 1986, following a bench trial in the 1984 action, the district court held that the Mercedes was Elliott's separate property and that it could not be used to satisfy her former husband's separate debt. A permanent injunction issued enjoining the defendants and their representatives from disposing of the vehicle. The district court also ordered the defendants to return possession of the car to Elliott "forthwith."[3] Undaunted, Denton disregarded the order requiring the immediate return of the Mercedes, and sought relief by appeal to this court. We affirmed the judgment in an order dismissing Escauriaza's appeal. See Escauriaza v. Elliott, 103 Nev. 802, 809 P.2d 31 (1987).
Notwithstanding the order of the district court, affirmed by this court, requiring Denton to return Elliott's car "forthwith," Denton continued to resist compliance with the tenacity of a pit bull.[4] After several show cause motions, the district court found the defendants jointly and severally in contempt for not returning the vehicle and again ordered them to do so. Faced with the threat of sanctions, Denton paid the $4,000 storage fee under protest and the Mercedes was finally released to Elliott in August, 1988over fourteen months after we affirmed the order requiring the immediate return of the car to Elliottin an extensively damaged condition. On appeal, Elliott contended that the district *730 court erred in dismissing her complaint because the defenses asserted against her claim for damages were barred by the doctrine of res judicata. Included within the bar, argues Elliott, was the attempt to invoke the attachment statutes (NRS Chapter 31) to defeat her right of recovery in the instant action.
As a third party claiming title to the levied property, Elliott's claim was governed by the attachment rules embodied in NRS Chapter 31. See NRS 21.120(2).[5] NRS 31.070 provides for the release of the levied property if the third person has filed a written claim and the person who caused the levy fails to file an undertaking upon demand by the sheriff. The undertaking indemnifies the third person against loss, liability, damages, costs and attorney's fees sustained by reason of the wrongful taking or withholding of her property. A claim against the bond may be made by motion in the same action, thus obviating the need to file an independent action. NRS 31.070 is a valid and complete remedy to third persons whose property has been wrongfully attached. Cooper v. Liebert, 81 Nev. 341, 344, 402 P.2d 989, 991 (1965).[6]
Unfortunately, Elliott failed to pursue the comparatively simple statutory remedy for the recovery of her vehicle, a fact that Denton claims is fatal to her instant action for damages arising from the wrongful levy. Denton also claims immunity from liability for the storage-damaged car under the theory that Denton was merely acting on behalf of its client and that it never had post-attachment possession of the vehicle.
An attaching (or, as here, a levying) party is liable for damages resulting from loss of use or destruction of erroneously attached property. See All Nite Garage v. A.A.A. Towing, Inc., 85 Nev. 193, 197, 452 P.2d 902, 905 (1969); see also Peterson v. Wiesner, 62 Nev. 184, 146 P.2d 789 (1944). The attaching party's liability is independent of any bond and exists jointly with the attaching officer. All Nite Garage, 85 Nev. at 197, 452 P.2d at 905. This is true even if the damage occurs while the property is in the sheriff's possession. Nevada Credit Rating Bureau, 88 Nev. at 608-09, 503 P.2d at 14 ("the sheriff's failure to protect the attached property does not benefit the . . . [tortfeasors] and insulate them *731 from the consequences of their initial tort").[7]
Although an attorney who, on behalf of a client, causes property to be levied upon pursuant to a writ of execution is generally not liable for resulting damages sustained by a third person, circumstances may exist that will render an attorney liable for the consequences of the levy. See, e.g., Grievance Comm. of Bar v. Sinn, 128 Conn. 419, 23 A.2d 516, 518 (1942); see generally 7 Am.Jur.2d Attorneys at Law § 234 (1980).
Here, Denton disregarded readily confirmable information that the Mercedes was Elliott's separate property and proceeded with the levy of execution under legal theories Denton thought would ultimately prevail. More importantly, Denton was ordered by the district court to return possession of the vehicle to Elliott "forthwith." Although Denton was not in actual possession of the vehicle, it was empowered, indeed directed by lawful court order, to cause its release, as it finally did in 1988. See also NRS 31.180(2).
If Denton doubted the validity of the return order, it should have properly challenged it in court; instead, Denton chose to defy the order. I am unaware of any principle of law or equity that would enable it to do so with impunity.
Moreover, Denton's attempt to avoid the consequences of its wrongful levy of execution by invoking the attachment statutes as an exclusive remedy should fall victim to the principle of res judicata.
The doctrine of res judicata (claim preclusion) precludes parties or their privies from relitigating a cause of action which has been finally determined by a court of competent jurisdiction. Horvath v. Gladstone, 97 Nev. 594, 596, 637 P.2d 531, 533 (1981). This is particularly true when the prior proceeding is between the same parties regarding the same cause of action. See Landex, Inc. v. State ex rel. List, 94 Nev. 469, 582 P.2d 786 (1978); York v. York, 99 Nev. 491, 664 P.2d 967 (1983). Not only is the prior judgment conclusive with respect to matters actually litigated, but also as to all matters which might have been litigated and decided in the prior action. York, 99 Nev. at 493, 664 P.2d at 968. We have previously held that:
A judgment on the merits by a proper court will operate to bar every matter offered and received to sustain or defeat the claim and every other matter which might with propriety have been litigated and determined in that action in subsequent litigation between the parties or their privies involving identical causes of action.
Bissell v. College Dev. Co., 89 Nev. 558, 561, 517 P.2d 185, 187 (1973). In the context of attachment proceedings, the wrongfulness of the levy or attachment is res judicata by virtue of a judgment against the attaching creditor in the attachment suit. Powell v. Schultz, 118 S.W.2d 25, 27 (Mo.Ct.App.1938).
In her 1984 action against Escauriaza, Denton and the sheriff, Elliott alleged wrongful attachment and sought an injunction and damages. Denton did not invoke Elliott's statutory remedies as an affirmative defense in that case. Moreover, as previously noted, Denton eventually recognized the validity of the judgment favoring Elliott by paying for the storage fees to effectuate the release of the vehicle, and thereafter filing an action against the sheriff's civil bureau for reimbursement.[8]
Denton now contends that it could not have raised the attachment statutes as a defense in the 1984 action "since the first case was for a `wrongful attachment,' relating to the taking" as opposed to Elliott's remedies after the taking. I disagree. *732 NRS 31.070 provides a remedy to third parties aggrieved by wrongful attachment or levy of execution whose property remains in the possession of the sheriff. That was precisely the situation which existed when Elliott filed the 1984 action. Elliott's statutory remedies could have been asserted by Denton as defenses to the 1984 action. I suggest that its failure to do so precludes Denton from raising them in the instant action.
Additionally, the district court in the 1984 action determined that Elliott's car had been wrongfully levied upon in light of its decree enjoining its sale and ordering its return. Thus, that issue was conclusively decided in the 1984 action. Nevertheless, the district judge in the instant case apparently believed that the orders issued in the 1984 action were not entitled to a conclusive effect because, in his opinion, the orders manifested "a misapprehension of the then Court that the Defendant ESCAURIAZA had possession or control of the 1964 Mercedes." This was error because the defendants, who were solely responsible for the wrongful levy of execution, were empowered to cause the release of the vehicle by paying the accumulated storage fees.
The propriety of the levy and the efficacy of defenses related thereto were subsumed by res judicata. The only issue left for the district court to determine in this case was the extent to which Elliott was damaged by virtue of the wrongful levy of execution and the prolonged failure to properly maintain or return the vehicle. This the court did not consider.
I began this lengthy dissent with an expression of regret over the suppression of equity. Equity delights in doing justice, and must as assuredly lament the failure to secure that objective. Equity is enlivened by fairness and smothered by its absence. For reasons specified above, I must conclude that the rule of law has failed to secure either justice or fairness in the instant case. The only truly innocent party, Karen Elliott, has been left with a judicial legacy not soon to be forgotten. Surely she will ever look with derision upon the premise that the civil justice system exists to right wrongs and make aggrieved parties whole.
I understand the reluctance of the majority to place the burden of loss on a respected law firm that undoubtedly sought, in good faith, to protect its client's interests in accordance with its considered judgment on how best to achieve that end. Unfortunately, Denton's legal theories have been rejected and the judicial resolution thereof has long since become final. Denton pried from Elliott property that was unavailable for the satisfaction of its client's judgment.
The majority has nevertheless rendered hollow Elliott's victory by depriving her of a meaningful remedy. Elliott had no role in the removal, storage and destruction of her valuable antique car. Although her attorneys failed to take advantage of a simple statutory remedy, Denton interposed no defense on that ground. The majority now concludes that despite the district court's order in the 1984 case requiring the prompt return of Elliott's car (which this court rightly or wrongly affirmed by its order dismissing appeal), and despite Denton's refusal to timely comply with the district court's return order, the loss Elliott has suffered must remain with her. The majority thus disregards the wrongful levy effectuated by Denton and punishes Elliott for her counsel's failure to pursue a statutory remedy the majority now views as exclusive.[9] Moreover, the majority chides Elliott for her failure to *733 expedite the return of her car through the statutory remedy, but ignores the more serious transgression involving Denton's disregard of a lawful and final court order that also added years of delay to this action.[10]
For the reasons discussed above, I respectfully dissent.
YOUNG, J., concurs.
NOTES
[1] The third-party claim statute is designed to give a summary remedy to persons, such as Karen Elliott, who own property in which a judgment creditor can claim no interest. That the true owner of levied-upon property has an "exclusive remedy" for recovering the property does not, of course, mean that a separate, tort remedy for malicious abuse of property may not be available to a person whose property is tortiously attached. In Nevada Credit Rating Bur. v. Williams, we recognized the existence of the malicious abuse of process tort in a case in which the "attachee" sued the attaching party, where the "attachment was far in excess of that necessary to secure the debt." 88 Nev. 601, 606, 503 P.2d 9, 12 (1972). Nevada Credit Rating Bur. was not a third-party claim case and therefore has no bearing on the present case; still, it is conceivable that a third-party claimant might, in an independent action, sue a sheriff or an attaching party for tort damages if she or he could prove "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." Id. at 606, 503 P.2d at 12. There has never been any suggestion of any "ulterior purpose" on the part of the Denton firm, and NRS 31.070 was at all times the exclusive remedy available to Karen Elliott.
[2] The exclusive nature of the NRS 31.070 remedy is seen in All Nite Garage v. A.A.A. Towing, Inc., 85 Nev. 193, 452 P.2d 902 (1969). In All Nite, the third-party claimant successfully secured return of a vehicle by employing the measures provided in NRS 31.070(2) "without the necessity of an independent action." Id. at 195 n. 1, 452 P.2d at 903-04 n. 1 (quoting NRS 31.070(2)). By motion, pursuant to NRS 31.070(2), the claimant sought and obtained recovery of damages and attorneys fees. Id. at 196, 452 P.2d at 904. The court noted in All Nite that it was not necessary to show a "wrongful attachment" in order to recover damages, costs and attorneys fees, id. at 196, 452 P.2d at 904; these could be awarded under the NRS 31.070 provision that allowed for recovery of all "loss, liability, damages, costs and counsel fees by reason of such seizing, taking, withholding or sale of such property by the sheriff." Id. at 195 n. 1, 452 P.2d at 903-04 n. 1 (quoting NRS 31.070(2)). In Cooper v. Liebert, 81 Nev. 341, 344, 402 P.2d 989, 991 (1965), quoted with approval in All Nite, this court held "that NRS 31.070 is a complete and valid remedy to third persons whose property has been attached, [and] that the remedy therein provided is exclusive." (Emphasis added.) If Karen Elliott had filed a proper third-party claim, she probably would have had her car back in no more than seven days. If she claimed to have suffered any "loss, liability, costs and counsel fees by reason of such seizing," she could have recovered these by "motion to the court [in the collection action] without the necessity of an independent action." NRS 31.070(2). She was ill-advised to file an independent action for wrongful attachment and for an injunction to get her car back.
[3] It is very clear that Elliott had an adequate remedy at law, namely, the legal remedy provided for by NRS 31.070; it is hard to understand how the trial court entertained a complaint for injunction under these circumstances.
[4] In her lawsuits against Denton and Denton, Karen Elliott insists on referring to the execution levy as an "attachment." There was never a writ of attachment issued in this case. In any event, when the wrongful attachment suit was dismissed in favor of Denton and Denton in the first lawsuit, this form of action became barred by res judicata.
[5] In her second lawsuit, Karen Elliott again sued Denton and Denton for wrongful attachment; but Karen Elliott does not try to pursue her supposed wrongful attachment action on appeal; rather, as stated in the text, she appears to rely on a theory of negligence.
[6] It is not entirely clear just what the nature of Elliott's tort claim is. Although she appears to be asserting a claim in negligence, Elliott's counsel was asked during oral argument to identify the tort action that he was pursuing on behalf of his client. Counsel responded, "It's contempt, your honor." It is not, then, entirely clear as to whether Karen Elliott is suing for negligence or for the rather novel, if not unheard of, tort of "contempt." If we were to assume that the injunction issued in the first lawsuit had any viability at all, then Denton and Denton complied with that injunction in June of 1988, and, having purged themselves of any possibility of contempt, can hardly be sued in 1991 for a tort based on a supposed contempt of court which necessarily had to have occurred some time before June 1988.
[7] Rather than attempting to establish negligent conduct on the part of Denton and Denton, Elliott's counsel rests his case on appeal on his assertion that "the judgment in case # A232778 was conclusive: the case was res judicata," that "final judgment in case A232778 precludes relitigation of those issues in the case at bar." (Elliott Op.Br. at 14, 21). The judgment in case A232778 has nothing at all to do with the thrust of the present case, which is Elliott's claim that the lawyers in the Denton law firm were negligent in the manner in which they cared for Karen Elliott's car. Elliott's negligence claim cannot possibly be established by the doctrine of res judicata.

Karen Elliott has also raised, in this appeal, issues relating to the manner in which the trial judge conducted the trial. Because Karen Elliott made no attempt to prove negligence and because the negligence claims cannot be established by res judicata, we conclude that there is no need to consider the contentions relative to the manner in which the trial was conducted. Denton and Denton are entitled to judgment as a matter of law.
[8] The Honorable David Zenoff, Senior Justice, was appointed to sit in the place of the Honorable Robert E. Rose, Justice. Nev. Const. art. 6, § 19; SCR 10.
[1] There is no need to address the basic nature of the underlying claim, i.e., whether equitable or an action at law. The linchpin supporting Karen Elliott's claim for damages in the instant action is an earlier 1984 action which resulted in an equitable mandatory injunction requiring Denton to promptly secure the release and return of the Mercedes to Elliott. As will be later detailed in the body of this dissent, this court dismissed the appeal from the equitable order resulting from the 1984 action and thus can hardly disavow the equitable characteristics and applications infusing this entire matter.
[2] Denton's client, Damasco Escauriaza, had obtained a judgment against Jack Elliott and his father, William, after they defaulted on a $20,000 loan. Karen Elliott was neither a party to the loan nor to the underlying action. She and Jack had divorced and the 1964 Mercedes was awarded to her as her separate property.
[3] Escauriaza had left the country in late 1985 or early 1986 and did not attend the trial. Before the commencement of trial, Elliott and the sheriff entered into a covenant not to execute.
[4] The apparent reason why Denton failed to immediately secure the return of the car to Elliott after we dismissed the appeal from the judgment resulting from the 1984 action was the accumulated unpaid storage fees that had to be paid in order to obtain the release of the vehicle. The initial deposit paid by Escauriaza was exhausted in late 1985 or early 1986. Denton apparently felt no obligation to pay for the release of the property secured on behalf of its departed client.
[5] NRS 21.120(2) provides, in pertinent part:

If any property levied upon by writ of execution or by writ of garnishment in aid of execution is claimed by a third person as his property, the same rules prevail as to the contents and making of the claim, as to the holding of the property and as to a hearing to determine title thereto, as in the case of a claim after levy under writ of attachment, as provided for by law.
[6] I strongly question the majority's conclusion, based upon Cooper, that NRS 31.070 provides an exclusive remedy to third-party claimants. First, Cooper construed the nature and availability of the remedy to benefit, not disadvantage, third-party claimants such as Elliott. To reverse the thrust of the remedy in order to deprive Elliott of her property enthrones and exalts form over substance and equity in a most offensive way. Moreover, it is tantamount to a judicially countenanced, unlawful expropriation of a non-litigant's property, a proposition utterly foreign to our civil justice system. Second, in the more recent case of Nevada Credit Rating Bureau v. Williams, 88 Nev. 601, 503 P.2d 9 (1972), we stated:

The appellants also contend that the respondent failed to take advantage of NRS 31.200 and related statutory provisions in his effort to have all or part of his property released from attachment, and as a consequence he should have been precluded from recovering damages for abuse of process. Although NRS 31.200 provides an avenue for relief from an excessive levy, it is not an exclusive remedy and action pursuant to that statute is not a condition precedent to an action for malicious prosecution, wrongful attachment or abuse of process.
Id. at 609, 503 P.2d at 14 (emphasis added).
Elliott first sought relief in law and in equity for the wrongful attachment of her vehicle. Although the trial court did not find a wrongful attachment, the court did find that Elliott's vehicle was her sole and separate property and that it was not subject to levy and sale by Denton and its client. The district court therefore ordered the immediate return of the car and we affirmed by dismissing the appeal from the district court's rulings. Denton and its client greatly delayed compliance with the return order and finally obeyed only after being held in contempt and threatened with sanctions. I suggest that the reasoning of Nevada Credit Rating Bureau should apply here since the principle is virtually the same.
[7] Although Denton caused Elliott's car to be levied upon pursuant to a writ of execution, there is no sound reason why the law relating to damages for the loss of property belonging to a third-party claimant under a levy of execution should be any different than when such loss occurs as a result of a wrongful attachment.
[8] The sheriff's civil bureau reimbursed Denton for $3,000 of the $4,000 Denton had paid in storage costs in settling the action filed by Denton.
[9] Ironically, Elliott's only possible source of relief may now be against her own attorneys for having failed to pursue the statutory remedy for the recovery of her car. I must again question whether equity is satisfied in placing greater blame on Elliott's lawyers for not proceeding in accordance with the statutory remedy preferred by the majority, than Escauriaza's lawyers for pursuing erroneous legal theories and resisting lawful court orders that combined to produce an unlawful levy and the eventual destruction of Elliott's property.
[10] Strange, indeed, is the majority's failure to also recognize the role this court played in Elliott's ongoing quest for justice. Our prior ruling on the orders issued by the lower court in the 1984 action has long been the law of the case, and despite the majority's belated chagrin over our earlier ruling, Elliott can hardly be blamed for pursuing the remedy clearly invited by this court.