EDWARD JOHN CLARK, Appellant, v. MARY H. CLARK, Respondent.

No. 4649

February 11, 1964                         389 P.2d 69

*Bible, McDonald & Carano,* of Reno, for Appellant.

*Stewart, Horton & McCune,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

The appeal is from a summary judgment in favor of a defendant wife in a divorce action. A final foreign decree of separate maintenance was deemed by the trial court to bar the plaintiff husband from proceeding further.

On April 28, 1961, in Florida, the wife sued the husband for separate maintenance, alleging extreme cruelty. Process was personally served on him in that state. He failed to appear. On August 9, 1961 his default was noted, and a decree pro confesso entered. That decree ordered, "that the bill of complaint herein be, and the same hereby is taken as confessed by the said defendant Edward John Clark and that this cause shall proceed ex parte and decree rendered by the court

according to law." Thereafter that case was dormant until January 10, 1963, at which time the wife did proceed ex parte to obtain a final decree of separate maintenance. Meanwhile, the husband had left Florida and come to Nevada. On December 28, 1962, he commenced an action for divorce in this State, charging his wife with extreme cruelty. The wife answered, pleading the Florida decree in bar. She did not counterclaim for affirmative relief. Later she moved for summary judgment, supporting her motion with an authenticated copy of the record of the Florida case. The husband presented nothing in opposition to that motion, choosing to stand upon his verified complaint.

The thrust of the husband's claim for a reversal of the judgment is that the cause of action alleged in this case (the wife's extreme cruelty to him, warranting divorce) was not actually litigated and decided in the prior Florida separate maintenance proceeding. The ultimate issue in the Florida case was the husband's cruelty toward the wife. The wife's cruelty was not an issue. Therefore, res judicata and related doctrines (collateral estoppel by judgment and estoppel by rule) are not effective to preclude this action. On the other hand, it is the wife's contention that the full faith and credit requirement of the federal constitution compels Nevada to recognize the Florida judgment as a conclusive and final determination of all issues that were or could have been decided in that case. Though that decree was by default following personal service of process, the husband had full opportunity to file an answer and counterclaim for affirmative relief. He must be treated as though he had done so, with the result that his present cause of action charging the wife with extreme cruelty must be deemed to have been litigated in Florida.

Initially it is best that we distinguish res judicata and collateral estoppel. The doctrine of res judicata is properly limited to the situation where there is a bar to or a merger of the former cause of action. It is a rule which precludes the parties from relitigating what

is substantially the same cause of action. Restatement, Judgments § 48 (bar); Restatement, Judgments § 47 (merger); Kernan v. Kernan, 78 Nev. 93, 369 P.2d 451 (merger); Biel v. Godwin, 69 Nev. 189, 245 P.2d 997 (merger). On the other hand, collateral estoppel (estoppel by record) may apply even though the causes of action are substantially different, if the same fact issue is presented. As distinguished from res judicata, it is the record of the former case rather than the judgment that stands as a barrier to relitigation.[1] One writer, for convenience, refers to res judicata as involving "claim preclusion," and collateral estoppel as dealing with "issue preclusion." See Vestal—"The Constitution and Preclusion/Res Judicata," 62 Mich.L. Rev. 33. The same rules as to privity and finality of judgment apply to each doctrine.[2] By virtue of the application of collateral estoppel to a different cause of action than that involved in the first suit, the doctrine is, in a sense, broader than the "bar" aspects of res judicata; yet, the restriction of collateral estoppel to issues actually litigated and necessarily determined in the first action may circumscribe the operation of that doctrine more closely than the "bar of res judicata" which may, in some jurisdictions, affect matters which "could have been" litigated. Restatement, Judgments § 68, comment (a), (1942). Of course, a final judgment of decree of a sister state, when rendered by a court of competent jurisdiction, acquires constitutional stature under the full faith and credit clause. Sherrer v.

[1] These doctrines are dissected and explained in the following articles: "Developments in the Law, Res Judicata," 65 Harv.L.Rev. 818; "Collateral Estoppel—Effects of Prior Litigation," 39 Ia.L. Rev. 217; "Collateral Estoppel by Judgment," 56 Harv.L.Rev. 1; "The Constitution and Preclusion/Res Judicata," 62 Mich.L.Rev. 33; "Domestic Relations and Something About Res Judicata," 22 U. of Pitts.L.Rev. 313.

[2] The Nevada cases of Miller v. Miller, 54 Nev. 44, 3 P.2d 1069, 11 P.2d 1088; Silverman v. Silverman, 52 Nev. 152, 283 P. 593 and Vickers v. Vickers, 45 Nev. 274, 199 P. 76, 202 P. 31, illustrate collateral estoppel (though the court spoke in terms of res judicata). In each, the later Nevada suit alleged a different cause of action. However, as the facts essential to establish the cause of action pleaded in the first case were the same facts needed to prove the cause of action alleged in the later case, the prior record precluded relitigation.

Sherrer, 334 U.S. 343 (as to the prior adjudication of jurisdiction; participation by both parties) ; Coe v. Coe, 334 U.S. 378 (companion case to Sherrer). However, we do not believe that the constitutional command of full faith and credit poses a choice of law problem. Cf. Ford v. Ford, 371 U.S. 187. Rather, the mandate of full faith and credit to judgments is limited to their effect as res judicata, and should not be extended to include questions of choice of law which may later arise. Reese and Johnson, "The Scope of Full Faith and Credit to Judgments," 49 Colum.L.Rev. 153. The constitutional requirement is fully met when we recognize the Florida judgment as it stands—a final determination that the husband and wife may live separately, with support provided, and resting upon the conclusion that the husband had been guilty of cruelty to his spouse. Accordingly, in deciding the preclusive effect to be given the final judgment of the Florida court, we are not to be governed by the Florida law of res judicata or estoppel, or by the effect of those doctrines upon the husband's ability to procure a divorce in that state, had he litigated his case there.[3] It seems to us that we are at liberty to follow Nevada law as to the scope of the doctrines of res judicata and estoppel, particularly in cases dealing with status where important state interests and public policies are involved. Cf. Bower v. Landa, 78 Nev. 246, 371 P.2d 657.[4] With these preliminary considerations before us, we turn to the instant case.

[3]Some writers appear to believe otherwise. See Vestal—' The Constitution and Preclusion/Res Judicata," 62 Mich.L.Rev. 33, 38, where he says, inter alia: "Simply stated, the full faith and credit concept requires that the judgment handed down in State A be given the same effect in State B that it would have been given in State A." See cases collected in 138 A.L.R. 346, at 365; 90 A.L.R.2d 745, at 751. The United States Supreme Court has been demonstrably inconsistent in its treatment of the scope of full faith and credit. See 49 Colum.L.Rev. 153.

[4]We do not intend to intimate that the scope of res judicata and estoppel is different in Florida than in Nevada. As we read Gordon v. Gordon, 59 So.2d 40 (Fla. 1952), the leading case in Florida, their view of the doctrines is the same as ours. However, the effect of applying such defenses to the substantive divorce law of that state may be different.

Without question, Nevada must give full faith and credit to the support provisions of the Florida judgment (which the trial court did) and, as well, to the finding that the husband was guilty of cruelty to the wife, if and when his conduct becomes an issue in this case. However, his conduct is not now an issue. He has charged his wife with cruelty. She has denied it. This cause of action was never presented to the Florida court, nor was any fact issue drawn regarding it.[5] Neither res judicata nor collateral estoppel are effective to forbid the prosecution of his present claim for relief. Should the wife elect to counterclaim for divorce or separate maintenance in the pending case, alleging the husband's extreme cruelty as a ground, then full credit will be given the Florida judgment on that issue. If this should occur, the trial court will then be called upon to exercise the discretion granted it by NRS 125.120, the comparative rectitude statute. Cf. Gabler v. Gabler, 72 Nev. 325, 304 P.2d 404; Sisson v. Sisson, 77 Nev. 478, 367 P.2d 98.

Having determined that neither the husband's alleged cause of action, nor the facts essential to prove it were actually litigated in Florida, we now turn to discuss the wife's contention that he is barred in any event because his present cause of action "could have been" litigated in Florida. The same contention was made in Weisheyer v. Weisheyer, 54 Nev. 76, 6 P.2d 439, and rejected. We there held that "if the matters on which

---

[5]Florida recognizes the defense of recrimination. Russ v. Russ, 150 Fla. 653, 8 So.2d 279; Stewart v. Stewart, 158 Fla. 326, 29 So.2d 247. Where that defense is not asserted and a finding made (as in the present case where the separate maintenance decree was by default) no fact issue is drawn regarding the plaintiff's conduct. Thus, the entry of a default decree will not support any inference that the plaintiff was without fault. Even if we were to assume (as the wife contends in this case) that the Florida default judgment did determine that the wife was without fault, such determination would relate only to conduct occurring before that suit was started on April 28, 1961 and would not preclude the husband from proceeding in Nevada if he could show that she was guilty of extreme cruelty subsequent to April 28, 1961. Koch v. Koch, 62 Nev. 399, 152 P.2d 430; Pease v. Pease, 47 Nev. 124, 217 P. 239.

the second action is based, although they might have been used as a defense in the first suit, constitute a substantive and distinct cause of action which the defendant in the former suit was not bound to plead or set up, the former judgment is not a bar. In other words, the rule (conclusive as to matters which might have been raised) has no application to those independent matters which the parties may, but are not required to and do not in fact, plead or rely upon." Many of the Nevada cases regarding the "might have been litigated" principle are reviewed in Bankers Trust Co. v. Pacific Employers Insurance Co., 9 Cir., 282 F.2d 106, 111, and we need not recanvass them.

We are not aware of a single case holding that if a spouse sues for separate maintenance the defendant must appear and, by affirmative defense or counterclaim, assert his grievances or otherwise be forever barred from doing so. Accordingly, we consider Weisheyer, supra, as controlling this phase of the appeal. In any event, the compulsory counterclaim rule of Florida, upon which the wife so heavily relies in presenting her "might have been litigated" argument, is merely a rule of procedure without extraterritorial significance. We approve the following statement of the Arkansas court in Hill v. Rowles, 223 Ark. 115, 264 S.W.2d 638, "We believe the better rule to be that even though a defendant in a separate maintenance suit has not asked for a divorce by way of cross complaint, he should not be barred from maintaining a suit for divorce at a later date. The policy of the law is to support and maintain the marriage status wherever it is reasonable to do so in the circumstances; and the husband should not be penalized because he did not ask for a divorce at the first opportunity."

For the reasons given, the summary judgment entered below must be reversed.

BADT, C. J., and MCNAMEE, J., concur.