ELIZABETH ANN AMBROSE, Appellant, *v.* FIRST NATIONAL BANK OF NEVADA, Executor of the Estate of Elizabeth F. Ambrose, Deceased, Respondent.

No. 6276

March 5, 1971                    482 P.2d 828

---

[Rehearing denied March 30, 1971]

*Peter Chase Neumann,* of Reno, for Appellant.

*McDonald, Carano, Wilson & Bergin* and *Gary A. Wood,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

This appeal is from an order of the district court refusing to terminate an inter vivos trust. The petition to terminate was presented to the court by the sole beneficiary, Elizabeth Ann Ambrose, and was based upon the proposition that the trust had become a dry trust since its material purpose had been accomplished. The trust was created in 1953 by the petitioner's mother, Elizabeth Fenno Ambrose, for the declared purpose of preventing the dissipation of her assets and contains a spendthrift provision that "no beneficiary of the income or principal of the trust property or any share or any part thereof may at any time assign, transfer, anticipate or create any lien upon the principal or income of the trust property or any interest therein." The First National Bank of Nevada was named trustee and was given the power to invade the principal for the support and maintenance of the settlor and her daughter, Elizabeth Ann, until the daughter became 21 years old. Thereafter, no provision was made for the support of the daughter except upon direction of her mother, the settlor. The trust was to continue after the death of the settlor, and when the daughter became 28 years old she was to receive one half of the corpus and upon attaining the age of 35 she was to receive the remainder, and the trust would end.

When the mother died in 1969 her daughter was sui juris and under no physical or mental disability. Since the trust instrument did not provide for the daughter's support after she had reached the age of 21 and until she became 28, the Bank petitioned the court for an order allowing the payment of discretionary sums to the daughter, asserting that the trust

instrument was ambiguous as to whether such payments could be made. The petition did not state in what respect the instrument was ambiguous, nor did the court, in granting the Bank's petition, point to any ambiguity. The daughter, who had notice of that proceeding, did not object to the Bank's request for authority to pay discretionary sums for her support. She did, however, at age 23, commence the instant proceeding to terminate the trust. The adversaries agree that the sole beneficiary of a trust, who is not under an incapacity, may compel its termination before the period fixed for its duration has expired, if continuance of the trust is not necessary to carry out a material purpose. Rest. Second Trusts § 337, Comment a at 158 (1959). Moreover, they agree that the attempt by the mother to create a spendthrift trust for herself was ineffective since such a trust may only be created for a person or persons other than the settlor.[1] NRS 166.040.[2] However, the Bank does contend that a valid spendthrift trust was created with

[1]The mother's desire to protect her estate against her own propensity to spend recklessly is firmly established by the preamble of the trust instrument, executed when her daughter was but six years of age. The preamble reads:

"WHEREAS, George K. Livermore has in his custody and under his management and control the property and securities, except for the real property, listed in "Schedule A", attached hereto and made a part hereof, and has from time to time invested and reinvested the securities in said "Schedule A" and has paid over from time to time the net income from said securities to the Grantor; and

"WHEREAS, the said property and securities listed in said schedule are the sole property of the Grantor; and

"WHEREAS, the Grantor has incurred numerous debts and liabilities over the past few years and at the present time, and in payment of such debts and liabilities has expended large sums over and above the income received from her securities, and has required said George K. Livermore to sell large quantities of her securities and deliver the proceeds to her for the payment and discharge of said debts and liabilities, with the result that the property and securities belonging to the Grantor have been dissipated and their value diminished by not under One Hundred and Ninety Thousand dollars during the past nine years; and

"WHEREAS, the Grantor has a daughter, Elizabeth Ambrose, aged six, who is dependent on the Grantor for her entire support and maintenance; and

"WHEREAS, if the Grantor continues to have access to the property and securities listed in said "Schedule A" she will, at the present rate of dissipation of said assets, very soon exhaust her property and securities still remaining, with the result that both she and her daughter may become public charges."

[2]NRS 166.040 reads: "Any person competent by law to execute a will or deed may, by writing only, duly executed, by will, conveyance or other writing, create a spendthrift trust in real, personal or mixed property for any other person or persons."

118

respect to the daughter and that its purpose had not been realized and termination before the period fixed for its duration has expired is, therefore, improper. This contention rests mainly upon two words of the spendthrift clause that "no beneficiary" may assign, transfer, anticipate, etc. Since the daughter is a beneficiary, the spendthrift clause applies to her. The trust instrument is otherwise void of language suggesting that the daughter, who was six years old when the trust was created, might become a spendthrift after reaching the age of 21 years, and that the settlor desired to protect her against that eventuality. We do not decide whether the Bank's position on this point has merit since the trust instrument as drawn removes this particular trust from the Spendthrift Trust Act with the result that the daughter, as sole beneficiary, may compel an early termination. We turn to explain why this is so.

1.   The Ambrose Trust is deemed to have been drawn in the light of the Spendthrift Trust Act, and the provisions thereof control the construction, operation and enforcement of the trust. NRS 166.060. Several provisions of the Act point to a precondition that provision must be made for the support and maintenance of the beneficiary before a valid restraint upon the transfer of a beneficiary's interest may be imposed. For example, NRS 166.090 provides that "provision for the beneficiary will be for the support, education, maintenance and benefit of the beneficiary alone. . . ." NRS 166.100 states that "provision for the beneficiary will extend to all of the income of the trust estate. . . ." Finally, NRS 166.120(1) excepts from the Act a trust that "does not provide for the application for or the payment to any beneficiary of sums out of capital or corpus or out of rents, profits, income, earnings or produce of property, lands or personalty." A trust that does not so provide may be anticipated, assigned or aliened by the beneficiary voluntarily. The mentioned statutory sections of the Act compel the conclusion that a trust which does not provide for the support and maintenance of the beneficiary may not qualify as a spendthrift trust under ch. 166 and is subject to general law regarding early termination. Since the Ambrose Trust does not provide for the support and maintenance of the daughter after she becomes 21 years old and until she attains the age of 28, the trust must fail as a spendthrift trust within the contemplation of the Act.

2.   The Bank contends that the prior district court order

allowing the Bank to pay discretionary sums to the beneficiary for her support somehow precludes the beneficiary from seeking an early termination of the trust in this proceeding. This contention is not sound. The validity of the trust as a spendthrift trust was not raised in the prior proceeding. Neither was the right of the beneficiary to compel an early termination an issue. Consequently, the doctrines of res adjudicata and collateral estoppel are not involved and the beneficiary is not foreclosed from asserting her right to an early termination. Clark v. Clark, 80 Nev. 52, 389 P.2d 69 (1964). The prior order did not cure the defect in the trust instrument nor was it intended to do so. The trust did not become a valid spendthrift trust for the daughter by reason of court authorization for her support. At that point in time the daughter enjoyed the right to compel an early termination and receive the entire trust estate. She had not yet asserted that right. The court possessed the power to provide for her support until she elected to exercise her right to terminate the trust, since her right to the entire corpus embraces her right to support.

3. We perceive no material purpose to be served by the continuation of this trust. Since it does not qualify as a spendthrift trust for reasons already expressed, the beneficiary may anticipate, assign or alienate her interest therein. NRS 166.-120(1). Were she to do so the settlor's intent would, perhaps, be frustrated. With this in mind it would appear absurd to refuse termination for fear of frustrating the settlor's intent, when the net result of such refusal is to continue the trust for the sole benefit of the trustee.

We are not persuaded that the doctrine of the leading American case of Claflin v. Claflin, 20 N.E. 454 (Mass. 1889), should rule the trust before us. That case announced the principle that a court will not direct termination prior to the time fixed therefor, even though the beneficiary desires to terminate, since this would be contrary to the purpose of the settlor. This, we think, is an arbitrary view when applied automatically and without regard to all of the settlor's underlying motives. Here, the overriding purpose of the settlor was to protect her estate against her own improvidence. This forcefully appears from the recitals of the trust instrument. No reason is expressed in the trust instrument for delaying the daughter's enjoyment following the settlor's death. No provision is made therein for the daughter's support between the ages of 21 and 28. Should

the daughter die during that period of time she would be denied enjoyment of the corpus. All of these factors together with a strong public policy against restraining one's use and disposition of property in which no other person has an interest [Warner v. Keiser, 177 N.E. 369 (Ind. 1931); Simmons v. Northwestern Trust Co., 162 N.W. 450 (Minn. 1917); Rector v. Dalby, 71 S.W. 1078 (Mo. 1903); In re Africa's Estate, 59 A.2d 925 (Pa. 1948)] leads us to conclude that termination should be decreed and the beneficiary spared the expense incident to the continued administration of the trust. The Bank, within a reasonable time, shall furnish to the beneficiary a final accounting in accordance with appropriate provisions of the Uniform Trustees Accounting Act and this trust shall thereafter be terminated and the trust estate delivered and transferred to Elizabeth Ann Ambrose, the sole beneficiary.

Reversed, with direction to enter judgment in accordance with this opinion. Costs are allowed to the appellant.

BATJER and GUNDERSON, JJ., concur.

ZENOFF, C. J., and MOWBRAY, J., dissenting.

We respectfully dissent. The trust in question is a valid spendthrift trust as regards the appellant; a material purpose of the trust remains to be accomplished; and the appellant is collaterally estopped from asserting the trust does not provide for payments to her. For these reasons, the decision of the lower court should be affirmed.

1. Appellant urges that the trust is invalid since it was invalid as regarded her mother as an attempt to establish a spendthrift trust for oneself. Appellant does not argue that the trust was void *ab initio,* however, so the question is not determined by its earlier validity or invalidity with regard to her mother. Coughran v. First Nat'l Bank of Baldwin Park, 64 P.2d 1013 (Cal.App. 1937); 2 G. Bogert, Law of Trusts and Trustees, § 223 (2d ed. 1965). The sole question with respect to this issue is whether the trust is a spendthrift trust as regards the appellant.

The answer to this question is determined by the Spendthrift Trust Act (NRS Chapter 166). NRS 166.020 defines a "spendthrift trust" as "a trust in which by the term thereof a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed." Appellant does not question the validity of the trust as regards herself (for example as a fraud against creditors), and as was indicated, its validity or invalidity as regarded her mother does not determine this

question. Instead, she asserts that the trust was not intended to operate as a spendthrift trust as to her.

Though the preamble to the trust speaks only of the intent to restrain her mother's spending, the body of the trust instrument was fashioned to restrain the appellant's spending also. She is to receive money out of the trust only at the discretion of the trustee until she reaches age 28, and she is precluded from assigning, transferring, anticipating or creating a lien upon her interest in the trust. NRS 166.050 indicates that no magic words are necessary for the creation of a spendthrift trust.[1]

2. By use of these words, a restraint is imposed on the voluntary and involuntary transfer of the appellant's interest within NRS 166.020. The material purpose of the trust remains to be accomplished so the appellant may not terminate it even though she is the sole living beneficiary. IV A. Scott, Law of Trusts, § 337.3 (3d ed. 1967). Under NRS 166.090 the existence of a spendthrift trust does not depend upon the character, capacity, incapacity, competency or incompetency of the beneficiary. It is not for us to decide the wisdom of the creation of the spendthrift trust as to the appellant, nor are those cases pertinent that allow beneficiaries to terminate an "ordinary" trust where the beneficiaries consent to a termination because the purposes of the trust are fulfilled. A spendthrift trust is "special," one that is established usually to prevent the beneficiary from becoming impoverished.

The purpose of this trust, at least it so appears, was to protect the daughter from experiencing what was happening to her mother. Such material purpose does not allow the beneficiary to reach the trust fund. The material purpose of this trust has not been served as to the daughter, and for that reason alone she cannot terminate the trust. Some states have judicially declared policies against spendthrift trusts (see 2 G. Bogert, Law of Trusts and Trustees, §§ 222, 224 (2d ed. 1965)) but the legislature in this state has chosen to sanction them and we must follow that direction.

3. Furthermore, the only statutory exception to the general rule of anticipation of the trust according to NRS 166.120 exists when the trust does not provide for payments to the

---

[1]NRS 166.050. *No specific language necessary for creation of trust.* No specific language is necessary for the creation of a spendthrift trust. It is sufficient if by the terms of the writing (construed in the light of this chapter if necessary) the creator manifests an intention to create such a trust.

beneficiary.[2] Appellant contends that even if the trust is a valid spendthrift trust as regards her, she may anticipate her interest in it because it does not provide for payments to her. The answer to this contention is that the trust does provide for the necessary payments. In November, 1969, a judgment was entered in the Second Judicial District Court, Washoe County, declaring that the respondent was empowered to pay the appellant discretionary sums under the trust instrument. The judgment recites that the appellant had notice of the respondent's petition to the court. She did not contest the propriety of that judgment and may not now act in disregard of it.

In Clark v. Clark, 80 Nev. 52, 56, 389 P.2d 69 (1964), this court stated: "On the other hand, collateral estoppel (estoppel by record) may apply even though the causes of action are substantially different, if the same fact issue is presented." *See also* Anno., 24 ALR3d 318 (1969). This rule applies here to bar the appellant's right to claim relief under NRS 166.120(1).

The November, 1969, judgment declared that the trustee was empowered to pay the appellant discretionary sums out of the trust under the ambiguous trust instrument. The appellant's assertion that she may anticipate recovery of her interest in the trust is founded upon the contention that the trust makes no provision for payments to her. She thus attacks collaterally the earlier judgment made in a proceeding of which she had notice. Allowing her to do so flies in the face of the well-reasoned rule announced in *Clark*. While it is true, as the majority indicates, that the earlier judgment did not determine the right of the appellant to compel an early termination of the trust, that judgment did make a finding which determines the outcome of this action.

It is well settled that judgments entered in probate proceedings are entitled to be treated as *res judicata*. Lucich v. Medin, 3 Nev. 93 (1867); 1 Banc. Prob. Prac. § 129 (1950); 46

---

[2]NRS 166.120. *Principle governing construction: Restraints on alienation.*

1. A spendthrift trust as defined in this chapter restrains and prohibits generally the assignment, alienation, acceleration and anticipation of any interest of the beneficiary under the trust by the voluntary or involuntary act of the beneficiary, or by operation of law or any process or at all. *An exception is declared, however, when the trust does not provide for the application for or the payment to any beneficiary of sums out of capital or corpus or out of rents, profits, income, earnings, or produce of property, lands or personalty. In such cases, the corpus or capital of the trust estate, or the interest of the beneficiary therein, may be anticipated,* assigned or alienated. . . . (Emphasis added.)

Am.Jur.2d, Judgments § 623 (1969). The appellant thus may not re-litigate this question merely because she was a non-contesting party to a probate proceeding.

This case is comparable to In re Freman's Estate, 8 Cal. Rptr. 311 (Cal.App. 1960), where the beneficiary was barred from contesting the propriety of the trustee's first accounting on the assertion that it had improperly refused to make retroactive payments out of the trust. The trustee had earlier sought court instructions on the distribution of the trust and was told to make distributions prospectively only. The later attack upon the trustee's accounting was viewed as a collateral attack on the earlier judgment and as such was held to be prevented by collateral estoppel. So also should the collateral attack presented here be prevented.

For the foregoing reasons, we respectfully dissent and urge that the judgment of the trial court should be affirmed.