**In re Lewis W. SHUMAN, Debtor.**

**Bankruptcy No. BK–S–86–00797.**

United States Bankruptcy Court,
D. of Nevada.

Dec. 19, 1986.

---

## MEMORANDUM DECISION

ROBERT CLIVE JONES, Chief Judge.

### FACTS

On April 14, 1986, Lewis Wayne Shuman ("Shuman") filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701–766. At the time he filed the petition, Shuman was the sole stockholder and president of American Investors Management, Inc. ("AIM") and was one of two trustees of the AIM Profit-Sharing Plan and Trust ("Profit-Sharing Plan") and the AIM Money Purchase Pension Plan and Trust ("Pension Plan"). The two Plans (collectively referred to hereinafter as "the Plans"), which were created in 1980, meet the requirements of ERISA, 26 U.S.C. §§ 1001–1461 (1982), and qualify for tax purposes under Internal Revenue Code Section 401(a). 26 U.S.C. § 401(a) (1982). In addition to Shuman, there are three former employees of AIM who are beneficiaries of the Plans. The value of Shuman's interest in the Plans is approximately $220,000.

In 1985, Security Bank of Nevada ("Security Bank" or "Bank") obtained a judgment against Shuman in a Nevada state court in the amount of $443,634.00. Security Bank subsequently attempted to levy and execute upon the Plans, but the Nevada court held that the Plans were valid spendthrift trusts under Nevada law and thus exempt from execution. See Nev.Rev. Stat. § 21.080 (1986).

In Amended Schedules filed on May 23, 1986, Shuman claimed his interest in the Plans as exempt from inclusion in the estate pursuant to section 522(b)(2) of the Bankruptcy Code, 11 U.S.C. § 522(b)(2),[1] and section 21.080 of the Nevada Revised Statutes. The trustee objected to Shuman's exemption of the Plans. Shuman opposed the trustee's objection and now contends that his interest in the plans is a valid spendthrift trust under Nevada law that is not property of the estate by virtue of Bankruptcy Code section 541(c)(2). 11 U.S.C. § 541(c)(2). The Trustee contends that the Plans do not satisfy Nevada spendthrift trust requirements and that even if they do they would not come within the exemption of section 522(b)(2) or the exception of section 541(c)(2).

---

1. Section 522(b) states in relevant part:

   (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

   \* \* \* \* \* \*

   (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; ....

## DISCUSSION

### A. The Plans as Property of the Estate

It is clear that if the Plans satisfy the spendthrift trust requirements of Nevada law, they are not property of the bankruptcy estate. Section 541(c) states in relevant part:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor....

\* \* \* \* \* \*

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The reference to "applicable nonbankruptcy law" in subsection (c)(2) refers only to state laws governing spendthrift trusts. In re Daniel, 771 F.2d 1352, 1360 (9th Cir.1985), cert. denied, — U.S. ——, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); In re Graham, 726 F.2d 1268, 1271 (8th Cir.1984); In re Goff, 706 F.2d 574, 581–82 (5th Cir.1983); Regan v. Ross, 691 F.2d 81, 85 (2d Cir.1982). Plans with anti-alienation provisions that qualify for favorable treatment under ERISA, see 29 U.S.C. § 1056(d)(1), or the Internal Revenue Code, see 26 U.S.C. § 401(a)(13), do not necessarily qualify for exemption from the estate under section 541(c)(2); any such plan must also qualify as a valid spendthrift trust under applicable state law. Daniel, 771 F.2d at 1360–61; In re Lichstrahl, 750 F.2d 1488, 1489–90 (11th Cir.1985); Goff, 706 F.2d 574. The issue here, then, is whether Shuman's interest in the Plans qualifies as a spendthrift trust under Nevada law.

### 1. Effect of the State Court Determination

### a. Collateral Estoppel

■ Shuman contends that the state court's determination that his interest in the Plans is a valid spendthrift trust under Nevada law is binding on this court under the doctrine of collateral estoppel. The Court disagrees.

Collateral estoppel prevents the relitigation of issues previously adjudicated where the causes of action in the two proceedings are different. Landex, Inc. v. State ex rel. List, 94 Nev. 469, 582 P.2d 786 (1978); Clark v. Clark, 80 Nev. 52, 55–57, 389 P.2d 69 (1964). A party attempting to invoke the doctrine of collateral estoppel must show (1) that the issue involved was actually litigated and necessarily determined in the first proceeding, and (2) that the parties to the second proceeding are the same as or in privity with those in the first proceeding. State v. Kallio, 92 Nev. 665, 668, 557 P.2d 705 (1976); Paradise Palms v. Paradise Homes, 89 Nev. 27, 31, 505 P.2d 596, cert. denied, 414 U.S. 865, 94 S.Ct. 129, 38 L.Ed.2d 117 (1973).

The first part of this test is satisfied because (1) the issue here and the issue in the state court action are the same, and (2) the issue was necessarily determined in the prior proceeding. The second part of the test is not satisfied, however, because the trustee is a privy of neither Security Bank nor the Debtor. "A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." Paradise Palms, 89 Nev. at 31, 505 P.2d 596 (quoting Bernhard v. Bank of America Nat'l Trust & Savings Ass'n., 19 Cal.2d 807, 122 P.2d 892 (1942)). It is unclear on what basis Shuman argues that the trustee is in privity with the Bank. It is clear, however, that the trustee's interest in the property in no way derives "through or under" Security Bank. Rather, the trustee's claim to the Plans is independent of the existence of the Bank's claim against Shuman's estate or the Plans. The trustee would be in the same position regardless of the existence of Security Bank's judgment. Thus, the trustee is not a privy of Security Bank.

Nor is the trustee in privity with Shuman. Any privity between a trustee and a debtor would derive from the trustee's relationship with the estate. Thus, Shuman could only argue that the trustee is in privity with him if the Plans are property of the estate. However, this leads to an impossible situation; if the Plans *are* property of the estate and the trustee is bound by the state court judgment, then the Plans are *not* property of the estate. The Court cannot permit such a catch–22 situation. The Court holds that there is no privity for collateral estoppel purposes between Shuman and the trustee regarding the state court determination.

#### b. Comity

■ A further argument that this Court is bound by the state court's determination is the principle of comity.[2] Under this principle, "[e]ven where federal courts have [power to resolve issues of state law], they are prohibited by considerations of comity and the proper balance of federal-state relations from making independent determinations of state law, but must treat state court resolution of state law issues as determinative." *Rowe v. Fauver*, 533 F.Supp. 1239, 1245 n. 8 (D.N.J.1982).

In the case at bar, this Court could, based upon the comity principle, consider itself bound by the state court determination. The Court declines to do so, however, under the facts of this case. First, the state court decision here was not rendered by the highest court of the state and, therefore, has no precedential effect on any other state court. Second, in the context of this case, there is a strong federal policy interest present; namely enlarging the bankruptcy estate. *See In re Goff*, 706 F.2d at 587; *see also Rowe v. Fauver*, 533 F.Supp. at 1245, n. 8 (federal courts should not undertake the function of determining state law issues absent some independent federal interest). Additionally, what constitutes property of the estate is a federal question, although bankruptcy courts will look to state law for assistance with state law questions. *In re Loughnane*, 28 B.R. 940, 942 (Bankr.D.Colo.1983). Finally, the equities of the present case suggest that this Court should carefully consider the question presented here. Unsecured claims against Shuman's estate total approximately $692,000.00 and there are virtually no nonexempt, unencumbered assets that will be available to satisfy these claims. Meanwhile, Shuman has a substantial income (net monthly income is $3,227.00 according to his schedules) and he has claimed as exempt a real estate interest in which he has $65,000.00 in equity. Shuman now seeks to exempt a $220,-000.00 pension plan interest even though, as discussed below, he can apparently reach the funds at any time. Under these circumstances, the Court feels compelled to carefully scrutinize the Plans to determine whether they should be included in the bankruptcy estate.

#### 2. The Plans as a Spendthrift Trust

In Nevada, spendthrift trusts are governed by the Spendthrift Trust Act of Nevada ("NSTA"), Nev.Rev.Stat. §§ 166.010 to .160 (1986). The NSTA defines a spendthrift trust as "a trust in which by the terms thereof a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed." Nev. Rev.Stat. § 166.020. No specific language is necessary to create a spendthrift trust, Nev.Rev.Stat. § 166.050, but the following requirements must be met: (1) the beneficiary or beneficiaries must be named or clearly referred to in the writing, Nev.Rev. Stat. § 166.080; (2) there must be a provision for the support, education, and maintenance of the beneficiary, Nev.Rev.Stat. § 166.090; *Ambrose v. First Nat'l Bank*, 87 Nev. 114, 118, 482 P.2d 828 (1971); (3) all income from the trust must be for the benefit of the beneficiary, except for fees, costs and taxes, Nev.Rev.Stat. § 166.100; (4) and the trust must restrain and prohibit "the assignment, alienation, acceleration

---

**2.** Neither party raised the comity issue in their briefs or at the hearing. In the interest of a full and fair discussion of this matter, the Court raises the issue *sua sponte.*

and anticipation of any interest of the beneficiary, under the trust by the voluntary or involuntary act of the beneficiary or by operation of law or any process at all." Nev.Rev.Stat. § 166.120.

■ The trustee argues that the Plans do not satisfy the requirements of the NSTA because they do not provide for the support, education, and maintenance of the beneficiaries. The trustee relies on *Ambrose v. First Nat'l Bank*, which is apparently the only reported case involving the NSTA. In *Ambrose*, the court held that because the trust at issue did not provide for the support and maintenance of the beneficiary during a six-year period, the trust failed as a spendthrift trust and the beneficiary could anticipate her interest in it. 87 Nev. at 118, 482 P.2d 828.

In the case at bar, however, even if the Plans do not provide for the support and maintenance of the beneficiaries, the trustee's argument fails. The *Ambrose* court stated that, "[a] trust that does not [provide for the support and maintenance of the beneficiary] may be anticipated, assigned or aliened by the beneficiary *voluntarily.*" *Id.* (emphasis added). Moreover, section 166.120 of the NSTA provides that when a trust does not provide for the support and maintenance of the beneficiary, "the corpus or capital of the trust estate, or the interest of the beneficiary therein, may be anticipated, assigned or aliened *by the beneficiary voluntarily, but not involuntarily or by operation of law or by any process or involuntarily at all.*" Nev. Rev.Stat. § 166.120 (emphasis added).

Therefore, even if the Plans do not provide for the beneficiaries' support and maintenance, the trustee cannot force Shuman to anticipate his interest in the Plans.[3]

■ The Court agrees with the trustee, however, that the Plans do not constitute a spendthrift trust and are therefore property of the estate. First, Shuman had a right to take distribution of his interest in the Plans when he filed his bankruptcy petition. Section 13.1 of each of the Plans provide for distribution to beneficiaries of their interests upon termination of employment, or upon termination of the Plans. Section 13.7 of each of the Plans provides, in part:

"Upon termination of a Participant's employment by the Employer for reason other than his retirement, disability or death, the Committee shall direct the Trustee to distribute the Participant's entire vested interest in a lump sum as soon as possible if the amount is less than One Thousand Seven Hundred Fifty Dollars ($1,750). If the amount of the distribution is in excess of One Thousand Seven Hundred Fifty Dollars ($1,750), the employee may request that the Committee direct the Trustee to distribute in another manner set forth above ..."

Section 2.13 of the Plans defines an Employee as a person "who is actually engaged in the full-time conduct of business of the Employer; ..." Having terminated his employment in July 1985,[4] Shuman, at the time the petition was filed, was in a position to demand a lump sum distribution of his interest in the Plans.[5]

---

3. The trustee argues that Shuman's right to take distribution passed to the trustee pursuant to Bankruptcy Code section 541(a)(1) and (b)(1). 11 U.S.C. § 541(a)(1), (b)(1). Shuman argues that when he filed his petition he did not have a right to distribution under the Plans and that, even if he did, the trustee cannot compel him to take distribution now. The Court need not address these arguments in light of the discussion below.

4. Shuman has been a full-time employee of Nevada First Thrift since July, 1985. Therefore, after that date, Shuman could not have been an employee of AIM as defined by the Plans.

5. Shuman argues that he did not have the right to take distribution under the Plans when he filed his bankruptcy petition because he had terminated his employment with AIM less than one year earlier. Shuman relies upon 26 U.S.C. § 401(a)(14) which, he argues, requires the expiration of one full year after termination of employment before recovering pension plan funds. The Court disagrees. Section 401(a)(14) provides in pertinent part:

(14) A trust shall not constitute a qualified trust under this section unless the plan of which trust is a part provides that, unless the participant otherwise elects, the payment of benefits under the plan to the participant will

Second, when he filed his bankruptcy petition, Shuman, as the president and sole shareholder of AIM, had the power to terminate the Plans. Section 15.2 of the Plans provides that AIM "may in its sole and absolute discretion discontinue such contributions or terminate the Plan in accordance with its provisions at any time without any liability whatsoever for such discontinuance or termination." Thus, Shuman could terminate the Plans at any time.

To qualify as a spendthrift trust, the restraint placed upon the beneficiaries' power to alienate his interest must be *valid*. That Shuman could take distribution under the Plans or terminate the Plans at any time calls into question the validity of the antialienation provisions in the Plans. Although the Nevada Supreme Court has not addressed the issue, in the majority of jurisdictions a seller may not create a spendthrift trust for his own benefit. Bogert, *Trusts and Trustees*, 2d ed. § 223, pp 438–39. In *Nelson v. California Trust Co.*, 33 Cal.2d 501, 202 P.2d 1021 (1949), the California Supreme Court stated:

> It is against public policy to permit a man to tie up his property in such a way that he can enjoy it but prevent his creditors from reaching it, and where the settlor makes himself beneficiary of a trust any restraints in the instrument on the involuntary alienation of his interest are invalid and ineffective.

*Id.*, 202 P.2d at 1021.

■ To establish the Plans as spendthrift trusts, the debtor must show that the plans were established by a separate entity for the benefit of the debtor, that the debtor cannot alienate his interest in the trust res, and that the debtor does not possess exclusive and effective control over termination or distribution.

The corporation in this case is legally a separate entity. In cases involving a one person corporation, however, the courts have chosen to disregard the corporate legal entity. *See In re Lichstrahl*, 750 F.2d at 1490; *Matter of Goff*, 706 F.2d at 574; Bogert, *supra* at 438–39; *see also In re Witlin*, 640 F.2d 661, 663 (5th Cir.1981).

As in *Lichstrahl*, Shuman is the sole shareholder and director of "the employer" corporation. Shuman has the power to terminate the Plans and the Trust at any time; he has effectively retained complete control and dominion over the property he argues is held in a spendthrift trust. In light of these factors, the Court must conclude that the Plans and the Trust are not spendthrift trusts entitled to be excluded from the estate under Code § 541(c)(2).

### B. The Plans as Exempt Property.

Code section 522(b)(2)(A) allows the debtor to exempt from the bankruptcy estate property that is exempt from execution under applicable state or nonbankruptcy federal law. As with Code section 541(c)(2), the term "nonbankruptcy federal law" as used in Code section 522(b)(2)(A), does not necessarily include ERISA-qualified pension and profit sharing plans. *In re Daniel*, 771 F.2d at 1360; *In re Lichstrahl*, 750 F.2d at 1491–92; *In re Graham*, 726 F.2d at 1274; *In re Goff*, 706 F.2d at 585. Thus, the Plans do not qualify for exemption under section 522 on those grounds. Moreover, as discussed above, the Plans do not constitute valid spendthrift trusts under Nevada law. Therefore, the Plans do not qualify for exemption under section 522.

### CONCLUSION

Based on the above, the Court concludes that Shuman's interest in the AIM Profit-Sharing and Pension Plans do not meet the requirements for exclusion from the bankruptcy estate under section 541(c)(2) or ex-

---

begin *not later* than the 60th day after the latest of the close of the plan year in which—

\* \* \* \* \* \*

(C) the participant terminates his service with the employer.

26 U.S.C. § 401(a)(14). (Emphasis added).

This provision does not require the beneficiary to wait one full year after termination before commencing distribution. Rather, it requires the beneficiary to commence distribution within one year and sixty days of the termination of service. Thus, Shuman's argument based upon section 401(a)(14) fails.

clusion from the estate under section 522(b)(2). Therefore,

IT IS HEREBY ORDERED that Shuman's interest in the Plans is property of his bankruptcy estate and shall be treated accordingly.