133 Nev., Advance Opinion 8

# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF FREI IRREVOCABLE TRUST DATED OCTOBER 29, 1996.

STEPHEN BROCK,
Appellant,
vs.
PREMIER TRUST, INC.; LAWRENCE HOWE; AND ELIZABETH MARY FREI,
Respondents.

No. 68029

**FILED**

MAR 02 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order allowing payments to be made from a beneficiary's interest in a trust. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Affirmed.*

The Law Office of Mike Beede, PLLC, and Michael N. Beede and Zachary Clayton, Las Vegas,
for Appellant.

Gerrard Cox & Larsen and Douglas D. Gerrard and Richard D. Chatwin, Henderson,
for Respondent Premier Trust, Inc.

Hutchison & Steffen, LLC, and Michael K. Wall, Las Vegas,
for Respondents Lawrence Howe and Elizabeth Mary Frei.

17-7093

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, CHERRY, C.J.:

In this opinion, we address whether an irrevocable spendthrift trust may be modified by the survivor of two settlors and interested beneficiaries. NRS Chapter 166, which governs spendthrift trusts, does not address this issue. We have, however, allowed modification of irrevocable trusts in certain circumstances. *See, e.g., Ambrose v. First Nat'l Bank of Nev.*, 87 Nev. 114, 119, 482 P.2d 828, 831 (1971) (holding that a sole beneficiary to an irrevocable trust could terminate the trust when the spendthrift clause was not valid and termination did not frustrate the purpose of the trust). Moreover, Restatement (Second) of Trusts § 338 (Am. Law Inst. 1959) provides that an irrevocable trust may be amended by a settlor and beneficiary as long as any nonconsenting beneficiaries' interests are not prejudiced. We adopt Restatement (Second) of Trusts § 338 (Am. Law Inst. 1959) and hold that an irrevocable trust, spendthrift or not, may be modified with the consent of the surviving settlor(s) and any beneficiaries whose interests will be directly prejudiced.

## FACTS AND PROCEDURAL HISTORY

Emil Frei, III, and his wife, Adoria, created the Frei Irrevocable Trust in 1996 (1996 Trust). Emil and Adoria each had five children from prior relationships, and all ten children were named equal

---

[1]The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.

 

beneficiaries under the 1996 Trust. The 1996 Trust contained a restraint on alienation clause, making it a spendthrift trust. Shortly after Adoria died in 2009, her son, Stephen Brock, successfully petitioned to modify the trust with Emil's consent (2009 modification). The petition proposed to alter the language controlling distribution of the trust property, granting any beneficiary the right to compel distribution of his or her share of the trust. Specifically, the proposed language provided in pertinent part:

> Upon an election in writing by any child of ours delivered to our Trustee, the trust share set aside for such child shall forthwith terminate and our Trustee shall distribute all undistributed net income and principal to such child outright and free of the trust.

All of Stephen's siblings and step-siblings were notified of the modification petition, and none objected. Because no interested party objected, the district court granted Stephen's petition to modify the trust. Subsequently, Premier Trust, Inc., became the co-trustee of the 1996 Trust.

In 2010, Stephen settled several lawsuits that Emil and his children had brought against him for alleged mismanagement of an alternate family trust (2010 settlement). Before agreeing to the settlement, Stephen conferred with counsel and responded to the district court's oral canvassing. In the settlement, Stephen denied any wrongdoing, but he agreed to pay $415,000 through monthly payments to the alternate family trust. Stephen also agreed to pledge his interest in the 1996 Trust as security for his payment obligation. Stephen made only one $5,000 payment to the alternate family trust.

After Emil died in 2013, the other nine beneficiaries requested and received their shares of the 1996 Trust funds. Stephen was the only

SUPREME COURT
OF
NEVADA

(O) 1947A

3

beneficiary who did not receive his share. The trustees of the alternate trust demanded that Premier use Stephen's share of the 1996 Trust to pay his 2010 settlement debt. Premier made three $100,000 payments before Stephen demanded that it stop. Stephen then filed the underlying petition to construe the terms of the 1996 Trust, compel repayment of the $300,000 Premier paid out on his behalf, and to remove Premier as trustee. The district court denied Stephen's petition, finding that: (1) Stephen was the only beneficiary whose interest was affected; (2) the initial intent of the two settlors was to treat their children as equal beneficiaries, and to allow Stephen to renege on his promise would disadvantage the other nine children; (3) the settlement money was to repay money that would benefit the other beneficiaries of the 1996 Trust; and (4) Emil and the other children relied upon Stephen's promise in the 2010 settlement when dismissing the various lawsuits against Stephen.[2]

## DISCUSSION

### Standard of review

In a probate matter, we "defer to a district court's findings of fact and will only disturb them if they are not supported by substantial evidence." *Waldman v. Maini*, 124 Nev. 1121, 1129, 195 P.3d 850, 856 (2008). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *In re Estate of Bethurem*, 129

---

[2]The district court also concluded that Nevada's spendthrift provisions prevent third-party creditors from reaching the funds in trust but do not similarly prevent the settlor or other beneficiaries from reaching the funds. Because we affirm on the grounds that the 1996 Trust was modified in 2009 and the modification invalidated the spendthrift provisions, we do not reach this issue.

Nev. 869, 876, 313 P.3d 237, 242 (2013) (quoting *Winchell v. Schiff*, 124 Nev. 938, 944, 193 P.3d 946, 950 (2008)). We review legal questions, including matters of statutory interpretation, de novo. *Waldman*, 124 Nev. at 1129, 195 P.3d at 856.

*The 2009 modification was a valid modification of the 1996 Trust, and the 2010 settlement is valid*

On appeal, Stephen argues that the district court's finding that the 2009 modification and the 2010 settlement were valid modifications of the 1996 Trust was erroneous because irrevocable trusts cannot be terminated and the death of a settlor precludes modification of the trust. In response, respondents argue that the trust modifications were effective and a spendthrift clause becomes invalid once a beneficiary is entitled to compel distribution of his or her share of the trust.

*Nevada law does not categorically preclude the modification of an irrevocable trust*

Stephen first argues that the word "irrevocable" in an "irrevocable trust" should be interpreted literally so that irrevocable trusts can never be terminated or modified. We disagree.

"A trust is irrevocable by the settlor except to the extent that a right to amend the trust or a right to revoke the trust is expressly reserved by the settlor." NRS 163.004(2); *see also* NRS 163.560 (stating that irrevocable trusts shall not be construed as revocable merely because the settlor is also a beneficiary). We have also held, however, that irrevocable trusts may be amended or terminated in certain circumstances. *See, e.g., Ambrose v. First Nat'l Bank of Nev.*, 87 Nev. 114, 119, 482 P.2d 828, 831 (1971) (holding that a sole beneficiary to an irrevocable spendthrift trust may terminate the trust when the spendthrift clause was invalid and termination did not frustrate the

purpose of the trust). Accordingly, as Nevada law provides for modification of irrevocable trusts in limited circumstances, Nevada law does not categorically preclude modifying an irrevocable trust.

*Nevada law does not provide that the death of a settlor precludes modification*

Stephen also argues that any modification of the 1996 Trust after Adoria's death was categorically forbidden because all settlors must consent to a modification. We disagree.

This is an issue of first impression in Nevada because neither the state's statutes nor this court's caselaw explicitly define when and by whom an irrevocable trust may be modified or if the death of one of several settlors precludes modification altogether.

A trust may be modified, without regard to its original purpose, if the settlor and all beneficiaries consent. Restatement (Second) of Trusts § 338(1) (Am. Law Inst. 1959);[3] *see also In re Green Valley Fin. Holdings*, 32 P.3d 643, 646 (Colo. App. 2001); *Hein v. Hein*, 543 N.W.2d 19, 20 (Mich. Ct. App. 1995). Even if all beneficiaries do not consent, those who desire modification may, together with the settlor, modify the trust unless the nonconsenting beneficiaries' interests will be prejudiced. Restatement (Second) of Trusts § 338(2) (1959); *see also Musick v. Reynolds*, 798 S.W.2d 626, 630 (Tex. App. 1990).

A spendthrift clause, in and of itself, does not prevent modification. Restatement (Second) of Trusts § 338 cmts. d, h. (Am. Law Inst. 1959); *see also Hein*, 543 N.W.2d at 20. Moreover, "[t]he restraint on

---

[3]In the absence of controlling law, we often look to the Restatements for guidance. *See, e.g., In re Aboud Inter Vivos Trust*, 129 Nev. 915, 922, 314 P.3d 941, 945 (2013).

the alienation of the interest by the beneficiary can be removed by the consent of the beneficiary and of the settlor." Restatement (Second) of Trusts § 338 cmt. h. (Am. Law Inst. 1959). After considering the parties' arguments and the authorities above, we adopt the Restatement (Second) of Trusts § 338 (Am. Law Inst. 1959), including comments d and h, governing trust modification.

In this case, Emil and Stephen, on their own, and on Adoria's behalf,[4] affirmatively consented to the 2009 modification. Stephen and Emil later consented to the 2010 settlement. Stephen pledged his interest in the 1996 Trust to secure his debt from the 2010 settlement with Emil, the sole surviving settlor. Most importantly, in this case, no other beneficiaries' interests under the 1996 Trust were prejudiced when Stephen modified the 1996 Trust in 2009 and entered into the 2010 settlement.[5] Accordingly, we conclude that both the 2009 modification and the 2010 settlement were valid.[6]

---

[4]Stephen claimed to act through Adoria's power of attorney when he declared that the proposed modification was consistent with her wishes in 2009.

[5]During oral argument, the subject of contingent and unascertained beneficiaries was discussed. Because the parties' briefs and the district court orders addressed only the named beneficiaries of the 1996 Trust, we do not reach the issue of whether unascertained or contingent beneficiaries need to consent prior to modification. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (stating that nonjurisdictional issues not raised in the trial court are waived); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (providing that we need not consider claims not cogently argued in the parties' briefs).

[6]Restatement (Second) of Trusts § 338 (Am. Law Inst. 1959) does not address the material purposes of a trust. Accordingly, we decline to
*continued on next page...*

*The spendthrift clause became invalid upon modification in 2009*

Premier argues that a spendthrift clause becomes invalid once the beneficiary is entitled to compel distribution of his or her share of the trust and that is precisely what happened in the 2009 modification. We agree.

A spendthrift trust is a trust containing a *"valid* restraint on the voluntary and involuntary transfer of the interest of the beneficiary." NRS 166.020 (emphasis added). A settlor does not need any specific language to create a spendthrift trust as long as the intent to do so is clear in the writing. NRS 166.050. If the spendthrift provisions are valid, neither the beneficiary nor the beneficiary's creditors may reach the property within the trust. NRS 166.120(1).[7] Furthermore, the beneficiary cannot dispose of trust income or pledge the trust estate in any legal process. NRS 166.120(3).

---

*...continued*
address Stephen's claim that the spendthrift clause was a material purpose of the 1996 Trust. To the extent that Stephen relies upon NRS 164.940(2) to suggest that a settlement agreement is void if it violates a material purpose of a trust, we decline to consider NRS 164.940(2) and its effect on this case, if any, because NRS 164.940(2) was enacted by the 2015 Legislature and does not govern the 2009 modification or the 2010 settlement. *See* 2015 Nev. Stat., ch. 524, § 61, at 3550; S.B. 484, 78th Leg. (Nev. 2015).

[7]The 2009 Legislature amended NRS 166.120 to remove an exception to the spendthrift rule allowing voluntary alienation in specific circumstances inapplicable to this case. *See* 2009 Nev. Stat., ch. 215, § 59, at 802; S.B. 287, 75th Leg. (Nev. 2009).

Once a beneficiary is entitled to have the trust principal conveyed to him or her, however, any spendthrift protection becomes invalid. Restatement (Second) of Trusts § 153(2) (Am. Law Inst. 1959). The beneficiary does not need to actually exercise the right of distribution, only possess it. *See In re Estate of Beren*, 321 P.3d 615, 622 (Colo. App. 2013).

In this case, the 2009 modification did not place any limitation on the ability of a beneficiary to compel the distribution of his or her share of the principal and income. Thus, as of the 2009 modification, Stephen and the other beneficiaries possessed an immediate right to compel distribution, and any spendthrift protections became invalid. Accordingly, the spendthrift protection became invalid in 2009, and Stephen's agreement to use his share of the 1996 Trust as security for payment in the 2010 settlement constituted consent to using his portion of the trust corpus to pay his debt in the event he failed to make payments pursuant to the 2010 settlement.

*The district court properly determined that Stephen was estopped from arguing that he lacked the power to modify the trust in this case*

Stephen also argues that the district court erred in applying judicial estoppel. The district court concluded that judicial estoppel prevented Stephen from arguing that the terms of the 1996 Trust forbade him from using his share to secure the 2010 settlement. Stephen argues that judicial estoppel should not apply because he only adopted his prior position due to a mistake and because his 2010 attorney forced him to agree to the settlement agreement. We are not persuaded by Stephen's argument.

Judicial estoppel is a principle designed to "guard the judiciary's integrity," and "a court may invoke the doctrine at its own discretion." *Marcuse v. Del Webb Communities, Inc.*, 123 Nev. 278, 287, 163 P.3d 462, 469 (2007). It is a doctrine that applies "when a party's inconsistent position [arises] from intentional wrongdoing or an attempt to obtain an unfair advantage." *Id.* at 288, 163 P.3d at 469 (internal quotation marks omitted). "Whether judicial estoppel applies is a question of law that we review de novo." *Deja Vu Showgirls v. State, Dep't of Taxation*, 130 Nev., Adv. Op. 72, 334 P.3d 387, 391 (2014).

"[O]ne of [judicial estoppel's] purposes is to prevent parties from deliberately shifting their position to suit the requirements of another case concerning the same subject matter." *Vaile v. Eighth Judicial Dist. Court*, 118 Nev. 262, 273, 44 P.3d 506, 514 (2002). "[A] party who has stated an oath in a prior proceeding, as in a pleading, that a given fact is true may not be allowed to deny the same fact in a subsequent action." *Id.* (internal quotation marks omitted).

When considering a claim of judicial estoppel, Nevada's courts look for the following five elements:

> (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.

*Marcuse*, 123 Nev. at 287, 163 P.3d at 468-69 (internal quotation marks omitted). All five elements are necessary to sustain a finding of judicial

SUPREME COURT
OF
NEVADA

(O) 1947A

10

estoppel. *Delgado v. Am. Family Ins. Grp.*, 125 Nev. 564, 570, 217 P.3d 563, 567 (2009).[8]

The first four elements of judicial estoppel are not at issue. First, Stephen has clearly adopted two different positions regarding his ability to modify the trust after Adoria's death. Second, Stephen asserted his prior position in a judicial proceeding with his 2009 petition. Third, Stephen successfully asserted his prior position because the district court approved his 2009 petition. Fourth, Stephen's two positions are entirely inapposite—first he asserted that the trust could be modified after Adoria's death, and now he asserts that it cannot. Accordingly, the judicial estoppel claim turns on the fifth factor: whether Stephen was acting under ignorance, fraud, or mistake when he took his first position in the 2009 petition for modification, and again in the 2010 settlement when he agreed to use his portion of the 1996 Trust corpus as security.

A client who relies on bad legal advice from otherwise competent counsel does not satisfy the burden of demonstrating a mistake to defeat an estoppel claim. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006) (citing *United States v. Boyle*, 469 U.S. 241 (1985)); *see also Something More, LLC v. Weatherford News, Inc.*, 310 P.3d 1106, 1108 (Okla. Civ. App. 2013). The remedy for detrimentally relying on bad legal advice is a malpractice suit against the attorney, rather than trying to

---

[8]*Delgado* invalidated the provision in *Mainor v. Nault*, 120 Nev. 750, 765, 101 P.3d 308, 318 (2004), which indicated that it was unnecessary to satisfy all five elements of judicial estoppel, and the provision in *Breliant v. Preferred Equities Corp.*, 112 Nev. 663, 668, 918 P.2d 314, 317 (1996), which indicated that changing one's position is all that is necessary.

Supreme Court
OF
Nevada

(O) 1947A

11

invalidate an agreement with a prior adversary. *Cannon-Stokes*, 453 F.3d at 449.

Stephen claims that he was previously mistaken about whether he and Emil could modify the 1996 Trust after Adoria's death. He also claims that the alleged mistake was made in good faith. The record demonstrates, however, that Stephen was represented by competent counsel when petitioning to amend the trust in 2009 and when securing the 2010 settlement with his interest in the trust. Furthermore, before Stephen was allowed to assent to the settlement in 2010, the trial judge orally canvassed him. The canvas demonstrates that Stephen understood the terms of the settlement agreement. The record also indicates that after reaching the 2010 settlement setting forth installment payments, Stephen made only the initial payment before failing to meet his remaining obligation. Thus, Stephen's argument that he acted based on a mistake, much less a good-faith mistake, is unpersuasive. Instead, it appears that Stephen was attempting to obtain an unfair advantage over parties to the 2010 settlement by using his interest in the 1996 Trust as security, failing to make payments, and then arguing that a modification he sought was invalid in an attempt to escape the consequences of his failure to make payments under the 2010 settlement.

Stephen's claim that estoppel should not apply because he entered into the settlement under duress is also unpersuasive. Stephen took the same position (that he could modify the 1996 Trust despite Adoria's passing) in 2009 as he did in 2010, and he does not claim that he was under duress in 2009. Moreover, if Stephen's 2010 attorney was truly abusive, that is not a reason to deny his siblings their bargained-for benefit of the 2010 settlement.

SUPREME COURT
OF
NEVADA

(O) 1947A

12

In this case, all five elements required to sustain a claim of judicial estoppel are satisfied. Stephen is not permitted to amend the 1996 Trust when it suits him, pledge his interest to repay his siblings for his alleged misconduct, and later change his position when his share is used to cover his failure to pay as he had previously agreed. Accordingly, we affirm the district court's use of judicial estoppel in this case.[9]

*The district court properly determined that Premier did not breach its fiduciary duty*

Stephen finally argues that Premier breached its fiduciary duty when it used Stephen's share of the trust to pay his settlement debt without first obtaining a judgment or even receiving legal process. Stephen further claims that Premier owed him a duty to prevent enforcement of the 2010 settlement because it violated the terms of the 1996 Trust. We disagree.

---

[9]The district court cited the invalidated language in *Mainor* in its order but reached the correct result anyway; therefore, we will nonetheless affirm its conclusion. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) ("This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason.").

The district court also erroneously cited *Vaile* for the proposition that the mistake element only applies to mistakes of law. We, however, did not address the five-element test in *Vaile*, nor did we distinguish between mistakes of fact and mistakes of law. 118 Nev. 262, 286, 44 P.3d 506, 522 (2002). Again, this incorrect interpretation did not lead to an inappropriate conclusion; therefore, we nonetheless affirm the result.

Supreme Court
OF
Nevada

(O) 1947A

13

"[A] 'fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Stalk v. Mushkin*, 125 Nev. 21, 28, 199 P.3d 838, 843 (2009) (quoting Restatement (Second) of Torts § 874 cmt. a (1979)). A claim for breach of fiduciary duty *"seeks damages for injuries* that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship." *Id.* (emphasis added).

In the context of a spendthrift trust, a trustee's ability to make payments from the trust is extremely limited. NRS 166.120(2). A trustee may not make payments to an assignee of the beneficiary, even if that assignment is voluntary, without first commencing an action in court. *Id.* Furthermore, "[t]he trustee of a spendthrift trust is required to disregard and defeat every assignment or other act, voluntary or involuntary, that is attempted contrary to the provisions of this chapter." NRS 166.120(4). In an action under the spendthrift act, however, a beneficiary must "show by clear and convincing evidence that the [trustee] acted . . . knowingly and in bad faith" and "directly caused the damages suffered by the [beneficiary]." NRS 166.170(5).

Because we have already concluded that the spendthrift provisions were invalidated in 2009, Stephen's claim for breach of a fiduciary duty must fail because there was no valid restraint on alienation when Premier made the three payments at issue. Even if the spendthrift clause remained valid, however, Stephen's claim would still fail because he

SUPREME COURT
OF
NEVADA

(O) 1947A

is unable to demonstrate bad faith as Premier relied on the district court's 2009 modification order and the district court's 2010 order approving the settlement when it made the payments at issue.

## CONCLUSION

The district court correctly determined that the 2009 modification and 2010 settlement were valid. The district court also correctly determined that Stephen was estopped from arguing to the contrary and that Premier did not breach its duty. Accordingly, we affirm the judgment of the district court.

_____, C.J.
Cherry

We concur:

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A

15